THE STATE, ROBERT TAPPAN ET AL., PROSECUTORS, v. THE LONG BRANCH POLICE, SANITARY AND IMPROVE- MENT COMMISSION AND THE BARBER ASPHALT COM- PANY.

1. The statutes establishing the Long Branch commission do not require an order for the payment of a pre-existing debt to be in the form of an ordinance.

2. Those statutes constitute a majority (four) of the commissioners a quorum for the transaction of business, and therefore a rule of the commission requiring five is void.

3. Those statutes empower the commission to contract for a general cor- porate obligation to meet the expense of paving streets by ordinary taxation.

4. When a municipal body, acting within the scope of its chartered powers, has entered into a contract for a public improvement, in pur- suance of proceedings regular on their face, and such contract has been performed by the other party, the fact that the preliminary proceed- ings were irregular constitutes no legal defence to a suit upon the con- tract against the municipality.

On *certiorari.*

Argued at November Term, 1896, before Justice DIXON.

For the prosecutors, *Thomas P. McKenna.*

For the defendants, *Wilbur A. Heisley.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up a resolution adopted August 14th, 1896, by the Long Branch commission direct- ing the payment to the Barber Asphalt Company of $900 for interest on notes of the commission held by said company. The reasons presented for setting aside the resolution are, in effect, these—first, that the action of the commission should have been taken by ordinance; second, that the votes of five members of the commission were necessary, while only four

were received; and third, that the commission had no power to pay the debt represented by said notes.

As to the first reason, I find nothing in the law establishing the Long Branch commission, which requires such action. as was here taken to be in the form of an ordinance.

As to the second reason, even if it be true that one of the standing rules adopted by the commission makes necessary the concurrence of five members in any order for the payment of money, that rule would be in contravention of the statutes establishing the commission, and therefore would be void. By the statute of April 8th, 1875 (*Pamph. L.*, *p.* 477), the commissioners are to be seven in number (section 1), and a majority of the whole number constitutes a quorum for the transaction of business. Section 31. The power thus conferred upon four members cannot be diminished by a rule or by-law of the corporation itself. *Breninger* v. *Belvidere*, 15 *Vroom* 350.

The third reason presents the serious question of the case.

It appears that, in accordance with two similar acts of the legislature passed in 1891 (*Pamph. L.*, *p.* 206) and 1892 (*Pamph. L.*, *p.* 146), and a supplement passed in 1893 (*Pamph. L.*, *p.* 109), the Long Branch commission entered into a contract with the Barber Asphalt Company for the paving of certain streets in Long Branch, agreeing to make partial payments therefor monthly as the work progressed, and to make full payment in four months after the whole work was completed and accepted. Under this contract the work was fully performed by the asphalt company, and the notes in question represent part of the price. Subsequently the commission caused assessments to be levied upon property benefited, for the purpose of meeting one-half of the cost of the improvement, in accordance with said act of 1892, and some of those assessments having been brought before this court by *certiorari*, they were, in June, 1896, set aside, for the reason that the acts of 1891 and 1892 were special, and therefore unconstitutional. *Dobbins* v. *Long Branch Commissioners, ante p.* 148.

On these premises it is argued that the alleged contract was void, that the commission is under no legal obligation to pay for the work, and under no moral obligation which it has authority to recognize.

An examination of the laws establishing the commission, the validity of which is not denied, will, I think, demonstrate that, independent of the unconstitutional acts mentioned, the commission had power to contract for the paving of the streets of Long Branch and to pledge the general credit of the municipality for the payment of the expense thereof. A supplement to the charter, approved April 8th, 1875 (*Pamph. L., p.* 477), declared (section 61) that it should be lawful for the board of commissioners, by ordinance, "to order and cause any street or section of a street to be  *  *  *  paved *  *  *  at the expense of the owners of lands and real estate on the line of said street or section of a street, and at the expense of the property benefited thereby." It further declared (section 85) that the commissioners should have power to issue scrip for the payment of the paving until the same could be collected from the owners of property liable therefor,  *  *  *  which scrip should bear interest at the rate of seven per cent. per annum, and should be paid within three months of the time of the completion of the assessment; that the commissioners should be authorized (sections 33 and 74) to borrow the amount necessary to pay such an assessment in anticipation of the collection thereof, and (sections 37 and 38) that they might raise by tax in each year such sum as they should deem expedient for the payment of the district debt, both principal and interest.

Although the sixty-first section above cited indicates a legislative purpose and expectation that the whole expense of paving streets should ultimately be raised by assessment upon the property benefited, yet this was not an essential feature of the grant of power to pave. *Watrous* v. *Elizabeth,* 11 *Vroom* 278; *Hitchcock* v. *Galveston,* 96 *U. S.* 341, 348; *Cumming* v. *Brooklyn,* 11 *Paige* 596. The other sections mentioned clearly show that the commission could contract

for a general corporate obligation to meet the expense of such an improvement by ordinary taxation, the municipality having merely the right to reimburse itself, so far as practicable, by special assessment on property benefited.  It thus appears that what was done by the commission in accordance with the unconstitutional acts of 1891 and 1892 might have been done by it in accordance with the valid supplement of 1875.

From the papers submitted to me, I am unable to ascertain whether the proceedings of the commission, relative to this improvement, conformed to the directions of the sixty-first section of the supplement of 1875, whether the paving was ordered by an ordinance introduced after public notice calling for objections to the proposed improvement, and passed by the votes of a majority of all the commissioners.  No lack of conformity is shown.  If those directions were followed, then, of course, the present objection is futile.  But if they were not strictly observed, if instead the steps prescribed in the acts of 1891 and 1892 were taken, as the prosecutors allege, then we still have compliance with the main requirements of the law of 1875, the vote of a majority of all the commissioners in favor of the improvement, and full opportunity for all other persons interested to express their objections against it, for these invalid acts require the vote of a majority of the commissioners, the consent of a majority of the owners of real estate on the street to be paved, and the approval of a majority of the voters at a special municipal election publicly called to decide whether the improvement shall be made. The method of awarding and executing the contract under each of these enactments is substantially the same, and it was adopted in the present case.

Under these circumstances, I think, neither the corporation nor its taxpayers, nor the owners of property benefited, can repudiate the contract.  The rule seems to be that when a municipal body, acting within the scope of its chartered powers, has entered into a contract for a public improvement in pursuance of proceedings regular on their face, and such contract has been performed by the other party, the fact that

the preliminary proceedings were irregular constitutes no legal defence to a suit upon the contract against the municipality. *Bigelow* v. *Perth Amboy,* 1 *Dutcher* 297 ; *Knapp* v. *Hoboken,* 9 *Vroom* 371 ; *Moore* v. *Mayor, &c., of New York,* 73 *N. Y.* 238.

Lastly, the prosecutors urge that the proceedings are illegal because they are in contravention of section 201 of the Crimes act (*Gen. Stat., p.* 1085), the aim of which is to confine municipal disbursements and obligations within appropriations previously made.

It sufficiently answers this objection to say that the facts necessary for its support do not appear, and cannot be presumed in face of the maxim *omnia rite acta præsumuntur. Atlantic City Water Works* v. *Atlantic. City,* 19 *Vroom* 378, 381.

The resolution for the payment of the interest appears to have been legal and should be affirmed, with costs.