THE LONG BRANCH POLICE, SANITARY AND IMPROVE-
MENT COMMISSION, PLAINTIFF IN ERROR, v. ED-
WARD T. DOBBINS, THOMAS T. KINNEY AND NATHAN
BARNERT, DEFENDANTS IN ERROR.

1. The act of March 12th, 1878 (*Pamph. L.*, *p.* 70), and its supplement of 1880 (*Pamph. L.*, *p.* 309), will apply to Long Branch, which is a political subdivision of Ocean township governed by "The Long Branch Police, Sanitary and Improvement Commission," which is invested with various municipal powers, among them being the right to lay out, widen and otherwise improve streets and avenues, and the making of a reassessment in Long Branch for a part of the costs, damages and expenses of paving streets and avenues, when the original assessment had been set aside as illegal, is warranted by the said acts.

2. An assessment for benefits from street improvements based upon the frontage of the property on the line of the streets improved, and when the depth of the lots assessed is not in all cases uniform, is not erroneous unless it appears by the evidence that the benefits have not been fairly and justly assessed among those benefited thereby.

3. A decision of the Supreme Court in a case of assessments for special benefits for street improvements, which sets aside "both the proceedings and assessment," and a rule has been regularly entered in conformity therewith, invalidates the entire assessment, and is not limited in its legal effect to the prosecutors only.

[*Argued March 8th*, 1898 ; *decided June 20th*, 1898.]

On error to the Supreme Court.

For the plaintiff in error, *Corbin & Corbin* and *Henry S. Terhune.*

For the defendants in error, *Craig A. Marsh.*

The opinion of the court was delivered by

NIXON, J. By an act of the legislature (*Pamph. L.* 1867, *p.* 976) "The Long Branch Police, Sanitary and Improvement Commission" was created, and to the commissioners certain municipal powers were given, and these powers were enlarged by several subsequent•acts of the legislature, between

1867 and 1875. In 1892 this commission contracted for the paving with asphalt of certain streets and avenues in Long Branch. In the case of *Tappan* v. *Long Branch Commission,* 30 *Vroom* 371, it was held that the commissioners had power to contract for the paving of the streets of Long Branch and to pledge the general credit of the municipality for the expense thereof. The paving improvements referred to in that decision are those for which the assessment now in question was made. The whole cost of the improvement was $149,692.79, and the assessments made for special benefits amounted to $49,891.05.

After the completion of the work an assessment was made upon the owners of lands on the line of the streets so improved for a part of the expenses incurred. This was done under the provisions of the act of March 11th, 1892 (*Pamph. L., p.* 146), but this law was pronounced unconstitutional by the Supreme Court in the case of *Dobbins* v. *Long Branch,* 30 *Vroom* 146. A reassessment was then made under the act of March 12th, 1878 (*Pamph. L., p.* 70), and the supplement thereto of 1880 (*Pamph. L., p.* 308), by three commissioners appointed on the 19th of October, 1896, pursuant to those acts, and their report to the Circuit Court of the county of Monmouth, was, on the 16th of February, 1897, after a full hearing, approved and confirmed. But the Supreme Court set aside this assessment by the judgment now under review.

The act of 1878, under which the assessment was made, is entitled "An act to provide for the assessment and payment of the costs and expenses incurred in constructing sewers and making other improvements in townships and villages," and the judgment of the Supreme Court was based upon the ground that Long Branch is "not a village either in the generic sense or in the more special sense in which our statutes employ the word." The question thus presented is fundamental and must be first considered.

The supplement of 1880 provides, in section 18, that "this act shall refer to all boards of commissioners or other persons having charge of any public improvement of the character

mentioned in this act, by whatever name or style such com-missioners may be designated or known by the act authorizing them to make such improvements." The Long Branch Com-mission has power, as we stated, to open and repair streets, and it also has power to impose taxes for certain purposes. There can, therefore, be no doubt that the body of the act is broad enough to include the jurisdiction of these commission-ers, by whatever name it may be called. But the body of an act will not obviate an imperfection in the title which is calculated to mislead or to obscure the real purpose of the act, and the question, therefore, is whether Long Branch is a village within the meaning of the title of this act.

The term "village," as a local political subdivision, was not legally defined in this state until the act of March 23d, 1891. *Pamph. L.*, *p.* 33. The passage of that act is, we think, equivalent to a legislative declaration that up to that time the word had no settled statutory meaning, but had been interchangeably used with the words town, borough, munici-pality governed by commissioners, or other names of similar import. This view was practically held by this court in the case of *Cherry* v. *Keyport*, 23 *Vroom* 544, in which it was decided that the acts of 1878 and 1880 were applicable to Keyport in the matter of a reassessment for street improve-ments, although Keyport is designated as a "town" in its charter, and is governed by a board of commissioners styled "The Board of Commissioners of the town of Keyport," whose powers are in many respects like those of the Long Branch commission. If Long Branch is not a village, it cer-tainly is a town, and, if a town, there is the highest judicial authority for holding that the word "village," in its legisla-tive meaning, will include a "town."

The late Justice Bradley, in the case of *Enfield* v. *Jordan*, 119 *U. S.* 680, in a learned and exhaustive discussion of the common use of the words "town" and "village" (at *p.* 686), said : "In New Jersey, Pennsylvania, Ohio, Indiana, Michi-gan and Illinois the subdivisions of a county answering to the town of New England and New York, are called town-

ships, though the words town and village are indiscriminately applied to large collections of houses less than a city. These results are gathered from an examination of the laws and constitutions of the states named." In the same opinion the learned justice, commenting on two conflicting decisions of the Supreme Court of Illinois relating to the application of the words " town " and " village," said : " We feel compelled to say that we regard the views expressed in the case of *Martin* v. *People*, 87 *Ill.* 524, as the most sound and convincing of the two."

In the case last cited, the reasoning of which the United States Supreme Court adopted, it is said (at *p.* 526) : " It is strenuously insisted that the town of Lake is neither a city nor a village, and that the words ' incorporated town ' must be construed to designate an incorporation other than that of a city or village, and that, as to this incorporation, this provision is unconstitutional, inasmuch as the title of the act limits its subject-matter to cities and villages and does not refer to incorporated towns." The court, further on, says : "An examination of the special charter of the town of Lake shows it to be a municipal corporation of the latter character, and, in so far as its organization is concerned, is merely an incorporated town, or, in other words, an incorporated village."

The town of Enfield, which was held by Mr. Justice Bradley to be included by the word " village," in the title of an act of the Illinois legislature, was incorporated by the name of " The town of Enfield." The government was administered by five trustees, a police magistrate, a treasurer and town constable, to be elected annually, and the municipal powers conferred by the charter are very similar to those exercised by the Long Branch commissioners. See *Enfield* v. *Jordan, supra.* We therefore think the legislative sense of the word " village," as employed in the title of the act of 1878, is broad enough to include Long Branch.

We however fail to discover anything in the act of 1867, incorporating the Long Branch police, sanitary and improve-

ment commission, or in any of the supplements thereto, which deprives that place of the title of village in its general sense. That it was known as a village and was so called up to the time the commission was created is an undisputed fact in this case.   It was formerly governed by the general law relating to townships, and some of the township laws are still in operation, the assessor of Ocean township, in which it is situated, assessing annually for county, township and state taxes within the corporate limits of Long Branch.   By the official census of 1880 its population was only three thousand eight hundred and thirty-three, a number not much, if any, above the average population of the villages of the state.   It has no mayor, although the president of the commission is sometimes, by courtesy only, called by that title.   In the supplement of 1868 (*Rev. Sup.*, *p.* 760, § 5), and also in the supplement of 1871 (*Rev. Sup.*, *p.* 790, § 1), in describing the territorial boundaries of the local government, four years after its first incorporation, Long Branch is referred to as the "village of Long Branch."   The growth in wealth and population of a village will not alone alter its character as such in the absence of any legislation.   The functions of local municipal government are necessarily much alike, whether exercised in a village governed by commissioners or in a large city, but that fact alone will not determine the classification of any locality.

We therefore hold that Long Branch is not excluded from the benefits of the remedial statute of 1878 and its supplement of 1880 by reason of any constitutional conflict between the body of those acts and their title, and will next consider whether there are other objections presented in the record sufficient to invalidate this assessment.   We will not discuss each of the numerous reasons urged, as several of them, in repeated instances, relate to the same subject-matter, but will deal with the different subjects of complaint in their order.

It is insisted that the act of 1878 and its supplement of 1880 do not warrant the making of this reassessment, but that contention cannot be sustained.   The scope of those acts

is very comprehensive, and their primary purpose is to afford a remedy in just such cases as the present, where a previous assessment has been declared invalid. This view finds abundant support in the case of *Cherry* v. *Keyport, supra;* *Commissioners* v. *Linden,* 13 *Stew. Eq.* 27.

It is also urged that the commissioners, in making their assessment, had regard only to the frontage of the lands on the line of the streets and avenues improved, and that no lands on side or connecting streets were assessed for special benefits. The allegation is true, for the commissioners in their report say, among other things, "that we found and determined that the only lands within the limits of the authority of the board of commissioners of Long Branch aforesaid, specially benefited by the improvements, are lands having an actual frontage on said streets and avenues, respectively, on which said improvement is made." This method of assessment has been repeatedly upheld in this state in cases of paving improvement. In *Hunt* v. *Rahway,* 10 *Vroom* 646, the assessment on the principle of frontage was sustained, and the reasoning in that case is quite applicable to the facts contained in this record. In *Raymond* v. *Rutherford,* 26 *Id.* 441, the court said: "The principle of frontage assessment for the special benefits arising from street improvements is not necessarily wrong. If that mode, in any particular case, properly distributes the benefits among the owners benefited, there can be no objection."

Another objection presented is that the commissioners failed to adopt a uniform depth for the lots fronting on the streets improved and to assess the benefits accordingly. In the testimony that inequality is explained. Commissioner Hawkins says: "In forming my judgment as to special benefits after a property ran back a reasonable depth from the public highway, the rear portion of it became insignificant in considering the question of benefits unless there was a street or avenue on the other side that would give that rear part value." Commissioner Walling also gives testimony of similar import. Entire uniformity of depth is not, however, a requisite in

making an assessment for special benefits on lands bordering on a street. *Van Solingen* v. *Harrison,* 10 *Vroom* 51. The commissioners say in their report: "In no case does the assessment made by us for the purposes aforesaid, upon any of the said lands, exceed the special benefits, in our judgment and opinion, arising from such improvements to the lands so assessed." To comment here upon all the details of the evidence would serve no useful purpose, and we therefore adopt the language of the court in *Raymond* v. *Rutherford, supra,* where it is said : "It cannot be expected that all the evidence and contentions arising out of it can be taken up and discussed. The report of the commissioners is before us, and the rule of law is clear that upon these points their judgment cannot be interfered with unless the force of circumstances and evidence convinces us that it is wrong and that an injustice has been done." In *Hunt* v. *Rahway, supra,* Mr. Justice Dixon held that " to overcome the report of commissioners of assessment as evidence, clear proof of great force is requisite." We find in the record of this case no convincing proof that the assessments made by the commissioners are not just, and while there is conflicting evidence there is a decided preponderance in support of the report. While the report itself would have been improved in some respects by greater explicitness, it is in substantial compliance with all the requirements of law.

It is also contended that the judgment setting aside the former assessment extended only to the prosecutors of the writ, and that it did not justify an entirely new assessment against all the landowners ; but an examination of the rule in the case of *Dobbins* v. *Long Branch, supra,* will not sustain this contention. The judgment of the Supreme Court was that " both the proceedings and assessment must be set aside, with costs." The rule entered was in exact conformity with this decision, and is as follows: " It is ordered that said proceedings and assessment be set aside, made void and for nothing holden, with costs." If the rule had been to set aside the proceedings and assessment as affecting the prose-

cutors, this objection would have great force, but it is in broad and general terms, and in such a case its effect is to invalidate and set aside the entire assessment. *Bergen* v. *Van Horne*, 3 *Vroom* 490.

The evidence does not support the reasons assigned, that the assessments were made against a group of property-owners arbitrarily selected from a class, nor does it sustain the allegation that the cost of the improvement was far in excess of a fair price.

Our conclusion is that the judgment of the Supreme Court, setting aside the assessment in this case, should be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, DEPUE, GARRISON, GUMMERE, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 9.