## BOOTH v. MIDVALE CITY et al.

No. 2280.   Decided November 8, 1919.   (184 Pac. 799.)

1. STATUTES—EXPRESS MENTION AND IMPLIED EXCLUSION. The maxim, "Expressio unius est exclusio alterius," is merely a technical rule of construction and cannot be used to thwart or subvert the obvious intention of the Legislature, and is properly applied only when the legislative intent is not plainly expressed.   (Page 226.)

2. MUNICIPAL CORPORATIONS—PAYMENT FOR STREET PAVING. A municipality under Comp. Laws 1917, section 570x8, has authority to order a street paved under an arrangement that the municipality should bear one-third of the expense, the county the remainder, and to pay its share of the expense out of the two-mill tax, levy of which is authorized by section 671, subd.

3; the provisions in sections 674 and 675 for special assessments for local improvements as streets not being exclusive.[1] (Page 227.)

Application to Supreme Court by J. Wilmer Booth for a writ of prohibition against Midvale City and another.

WRIT DENIED.

*J. C. Wood,* of Salt Lake City, for plaintiff.

*H. A. Smith,* of Salt Lake City, for defendants.

THURMAN, J.

This is a proceeding for a writ of prohibition restraining and prohibiting Midvale City, a municipal corporation of Salt Lake county, Utah, from entering into a contract with said county for paving a certain street within the limits of said city. It is stipulated by the parties that the facts alleged in the answer of the defendants are true and constitute all the facts pertaining to the matter in controversy. The answer, in substance, alleges that defendant city is a municipal corporation of the third class; that the other defendant, John Aylett, is its duly elected and qualified mayor; that plaintiff is a resident and taxpayer of said city, both as to real and personal property; that Center street is a public thoroughfare running east and west through said city, and from the Oregon Short Line Railroad on the east to Jordan river on the west the street is wholly within said city, and between said points is a distance of 7,920 feet; that defendant, if not restrained, will enter into a contract with said county whereby said city and county will jointly construct a bituminous pavement eighteen feet wide along and upon said Center street between said points and throughout the entire distance above named, at a total expense of $42,554.55; that the city's portion of

---

[1] *Pettit* v. *Duke,* 10 Utah, 311, 37 Pac. 568; *Board of Education* v. *Hunter,* 48 Utah, 373, 159 Pac. 1021.

said amount will be one-third thereof, or $14,151.52, which said last-named sum the city intends to pay unless restrained by order of this court; that defendant has not given notice to levy a special tax to raise funds for the payment of said improvement and has taken no steps to that end, but, on the contrary, the defendant, unless restrained, intends to pay its proportion, or one-third of the cost of said improvement, from the general fund of said city; that the city, by its council, has passed a resolution authorizing its mayor to enter into a contract with Salt Lake county whereby the city will agree to pay one-third of the cost of said improvement if the county will pay the remaining two-thirds; that such payment by said city will increase the taxes to be levied against the real and personal property of the plaintiff in the same proportion and in the same manner as it will increase the taxes of other residents of said city and not·otherwise; that said Center street is the principal street for traffic and travel through said city, and for more than thirty years last past has been used as a public highway; that it is extensively traveled and forms the chief thoroughfare from Salt Lake City through Midvale City to Bingham Canyon and numerous towns in said county; that said street at all places within the limits of said city is in bad repair and wholly unfit for traffic or travel, and it is necessary to expend approximately $4,950 on said street in order to place it in condition for temporary use; that when such money is expended for said purpose such repair will be temporary only, and it will be necessary from year to year to expend large sums in maintaining said street within the said city in such condition that it may be used as a public street; that for many years last past said city has been compelled to expend large sums per annum in sprinkling said street within the limits of said city, and said sums have been and in the future will be necessary for said purpose; that if said street shall be paved in the manner contemplated, sprinkling thereof will not be necessary, the improvement thereof will be permanent, and for a long period of time it will not be necessary to expend money in repairing said street; that it is for the best interest of all the people of said city to permit the defendant city to enter into said contract with Salt Lake county.

The facts further show that the bridge on Center street across the Jordan river is in such condition that it is dangerous and inadequate for traffic and travel to and through said city, and that it is necessary to replace the same by a steel structure; that defendant will be compelled to and will replace the same with a steel structure at a cost amounting approximately to $10,766.32; that the total cost of paving said Center street and replacing said bridge by one made of steel will be approximately $52,344.12; that said street extends through farming and vacant lands on both sides for practically the entire distance, and it is impracticable to pave the same in whole or in part from funds raised by local assessment upon abutting property; that the expense thereof would be wholly disproportionate to and in excess of any special benefits which said property owners would receive from said improvement; that all the inhabitants of said city will derive substantially the same benefits from the improvement now contemplated in the proposed agreement with said county; that by said proposed agreement with said county the county will pay two-thirds of all the costs of said improvement, including the installation of said steel bridge, and the defendant city will pay the remainder, to wit, the sum of $17,448.04; that State street from Salt Lake City to the intersection of said Center street is now paved with concrete and bituminous pavement and Salt Lake county proposes to and will pave the public highway from the Jordan river westerly to the town of Bingham, and, unless defendant is permitted to and does join said county in the paving of said Center street, said street will remain unimproved for an indefinite length of time and will remain in such condition that it will not be suitable or fit for public traffic or travel; that if defendant is permitted to join said county in said improvement the entire distance from Salt Lake City to Bingham Canyon will be placed in good condition for public travel. Such, in substance, are the admitted facts.

At the close of the oral argument the court was convinced, without further investigation, that the writ prayed for should be denied, and so ordered immediately, in order that the de-

fendant might proceed in its contemplated agreement with the county. It only remains to state the contention of the parties and our reasons for the conclusion arrived at.

Plaintiff contends that notwithstanding the provisions of Comp. Laws Utah 1917, section 570x8, which confers upon cities, among other things, the power to pave streets within their limits, and the provisions of section 671, subd. 3, which authorizes cities to levy a tax annually of not to exceed two mills on the dollar to open, improve, and repair streets, still the cities are without power to pay for the pavement of said streets otherwise than by local assessment upon property abutting upon the streets to be improved. In this contention plaintiff relies upon the provisions of said Comp. Laws, sections 673, 674, and 675, all of which sections relate to special taxes levied upon the property of abutting owners in paving districts laid out with the view to improvements by the method of local assessment. Sections 674 and 675, specially relied on by plaintiff, read as follows:

"674. To defray or cause to be defrayed the cost and expense of such improvements or any of them, the city council shall have power and authority to levy and collect special taxes and assessments upon the blocks, lots, or parts thereof, and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk thus in whole or in part opened, widened, curbed and guttered, graded, parked, extended, constructed, or otherwise improved or repaired, or which may be especially benefited by any of said improvements; provided, that the above provisions shall not apply to ordinary repairs of streets or alleys, and that one-half of the expense of bringing streets, avenues, alleys or parts thereof to the established grade shall be paid out of the general fund of the city; and such council shall have power to pave, repave, or macadamize any street or alley or part thereof in the city, and for that purpose to create suitable paving districts, which shall be consecutively numbered, such work to be done under contract.

"675. The cost of paving, macadamizing, or repaving of the streets and alleys within any paving district, except the intersection of streets and space opposite alleys within such district, shall be assessed upon the lots and lands abutting upon the streets and alleys in such district, in proportion to the square feet, or feet front, or both, so abutting upon such streets and alleys."

The matter in controversy turns entirely upon the question as to whether the method provided by the sections just quoted

for paying the cost of paving streets is exclusive, or whether the city is also clothed with authority to pay for similar improvements from the general fund. If plaintiff's contention is correct, it follows that in no case can the city use the general funds or any part thereof for the pavement of its streets. No matter where the street may be situated, nor how generally it may be used for traffic and travel, if paved at all it must be paved exclusively at the expense of the abutting owners, and if a sufficient number of the abutting owners protest against it as the law provides they may, then the improvement cannot be made at all. The proposition is novel in this jurisdiction. It is contrary to every conception of the law we have hitherto entertained concerning controversies of this kind.

It is conceded by the plaintiff that, were it not for the provisions contained in the sections quoted, the other sections to which we have referred confer ample authority upon the city to pay for the improvement out of the general fund. In other words, it is admitted that section 570x8, supra, which confers power to pave, and section 671, supra, which authorizes the levy of a tax annually to open, improve, and repair, would be sufficient to authorize payment out of the general fund for the improvement in question, were it not for the provisions contained in the sections quoted.

Plaintiff's contention in the concrete is best explained by quoting literally from his able brief in this case. After quoting the language of section 674, supra, he says:

"While the words 'shall have power and authority to levy and collect special taxes and assessments,' as used in section 674, would seem to be merely the grant of an additional power, yet the subsequent provisions of the statute that special assessments shall not apply to ordinary repairs, or one-half of the expense of bringing streets to grade, indicates that it was the intention of the Legislature to limit the authority of the city councils in the making of local improvements, and paying for the same, doing so by special taxes and assessments upon the property especially benefited thereby. The express mention that special assessments shall not be levied to make ordinary repairs, or for paying one-half of the expense for bringing streets to grade and the provision that ordinary repairs, or one-half of such expense to bring streets

to grade, shall be paid out of the general fund, implies that all other improvements of a local nature, especially benefiting certain property, shall be paid for by assessments upon the property especially benefited."

It will be seen from the foregoing excerpt that plaintiff relies upon the maxim, "Expressio unius est exclusio alterius." His argument proceeds:

" * * * .The express mention that ordinary repairs and one-half the expense of bringing streets to grade, shall be paid out of the general fund, is an exclusion of all other improvements mentioned in that particular section of the statute, and a limitation upon the authority of the city council, where the improvement is a local one, to the defraying of the expense by special taxes or assessments."

The maxim relied on is merely a technical rule of construction. It cannot be used to thwart or subvert the obvious intention of the Legislature. It should only be resorted to when the intention of the Legislature is not otherwise plainly expressed. No reason is stated by plaintiff, nor does any appear to the mind of the court, why all of the provisions of the various sections referred to may not stand and be given full force and effect. Section 570x8. supra, confers upon the city the express power to pave. Section 671, supra, confers power upon the city to raise a fund annually by general taxation at least to the extent of two mills on the dollar. No reason is given why this fund may not be applied in paving the streets of the city in the discretion of the city council, except in the opinion of plaintiff to the effect that these provisions of the law should yield to the maxim, "expressio unius," etc. which, as before stated, is a mere rule of construction to be resorted to only when the intention is not otherwise clearly expressed. All the reasons which occur to our minds are against plaintiff's contention. Not only is the language of the statute conferring power to make the improvement and the means to do it with by general taxation clear and unmistakable, but the reasons why cities should have such power are equally clear. It is admitted in the instant case that all of the inhabitants of Midvale City will derive substantially the same benefits from the contemplated improvement. Center street is the principal street of

the city.   It is used by all of the inhabitants and the public generally.   Why should not this general fund which the city is authorized to raise for the very purpose of improving the streets be applied to paving this particular street which is admittedly for the common benefit of all?   Why should the city be compelled to resort to proceeding by local assessment upon the property of abutting owners and incur the risk of a successful protest which would defeat the undertaking altogether?   It is easy to conceive of an improvement upon a street that ought not to be made against the protest of abutting owners—a street which may be of small consequence to the general public but of infinite importance to those living in the immediate vicinity.   In such case, the city in its discretion should, and probably would, resort to the method of local assessment instead of applying the general fund.

Counsel for plaintiff has industriously collated and called to our attention several cases bearing in a greater or less degree upon the matter in controversy.   As sustaining his contention, however, they are far from satisfactory.   They are nearly all easily distinguished from the case at bar.   The distinction will readily appear upon casual examination, and therefore the cases need not be considered in detail.   Such as are not distinguishable, we believe, are contrary not only to reason but to the great weight of authority.   We cite them, however, for the benefit of those whom it may concern:   *Pettit* v. *Duke,* 10 Utah, 311, at page 317, 37 Pac. 568; *Township of Dubuque* v. *City of Dubuque,* 7 Iowa, 262; *Bryan* v. *Sundberg,* 5 Tex. 418; *Scott* v. *Ford,* 52 Or. 288, 97 Pac. 99; *N. Y. Central R., etc., Co.* v. *Reusens,* 151 App. Div. 458, 135 N. Y. Supp. 919; *Murtauge* v. *Patterson,* 45 N. J. Law, 267; *Findlay* v. *Howe,* 13 Wash. 236, 43 Pac. 28; *Bank of Lansing* v. *Lansing,* 25 Mich. 207; *Zottman* v. *San Francisco,* 20 Cal. 97, 81 Am. Dec. 96; *Johnson* v. *Common Council,* 16 Ind. 227.

The defendant city contends that the power to levy local assessments upon the abutting owners for the improvement of streets is merely an additional power and by no means exclusive; that the city may resort to the local assessment method or improve the streets out of the general

fund in its discretion, at least it may apply the general fund to the extent of two mills on the dollar. As already fore-shadowed, in our opinion the defendant's contention is correct. In support thereof it calls our attention to the doctrine enunciated by several text-writers and in numerous apparently well-considered cases. In McQuillan, Mun. Corp. vol. 4, section 1863, the author says:

"Usually when a municipal corporation has power to make or provide for the making of improvements it has power to make arrangements to meet the expense thereof. The mode of paying for public improvements is sometimes prescribed by statute or charter, but in the absence of express direction the method to be adopted is within the discretion of the proper authorities. A general power authorizing the paying for public improvements by special assessments is usually construed *as not affecting the power of the municipal corporation to make improvements and pay therefor out of the general revenue.* However, the rule is different under authority to make the improvement only at the expense of the property abutting thereon." (Italics ours.)

In 28 Cyc. at page 969, we find the following:

"A municipality, subject to the ordinary legislative limitations as to expenditures and indebtedness, may improve its streets and pay for the same out of its general funds; and a charter or statutory provision allowing special assessments does not necessarily deprive the city of this power; but in the absence of express direction, it leaves to the discretion of the municipal authorities the choice of modes for defraying the expenses."

Defendant also cites the following cases, many of which are decisive of the question here presented: *Commonwealth* v. *George,* 148 Pa. 463, 24 Atl. 59, 61; *Garden City* v. *Trigg,* 57 Kan. 632, 47 Pac. 524; *Atchison* v. *Len,* 43 Kan. 138, 29 Pac. 467; *Tappan* v. *Long Branch, etc.,* 59 N. J. Law, 371, 35 Atl. 1070; *City of Evansville* v. *Summers,* 108 Ind. 189, 9 N. E. 81; *Memphis* v. *Brown,* 20 Wall. 289, 22 L. Ed. 264; *Soule* v. *City of Seattle,* 6 Wash. 315, 33 Pac. 384; *Pine Tree Lumber Co.* v. *City of Fargo,* 112 N. D. 360, 96 N. W. 357; *Clark* v. *City of Des Moines,* 19 Iowa, 221, 87 Am. Dec. 423; *State ex rel.* v. *City of Ely,* 129 Minn. 40, 151 N. W. 545, Ann. Cas. 1916B, 189; *Barber Asphalt Pav. Co.* v. *City of Harrisburg,* 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *District of Columbia* v. *Lyon,* 161 U. S. 200, 16 Sup. Ct. 450, 40 L.

Ed. 670; *Portland Lumber Co.* v. *City of East Portland,* 18 Or. 21, 22 Pac. 543, 6 L. R. A. 290; *United States* v. *Ft. Scott,* 99 U. S. 152, 52 L. Ed. 348; *Heller* v. *Garden City,* 58 Kan. 236, 48 Pac. 841; *Board of Education* v. *Hunter,* 48 Utah, 373, 159 Pac. 1021; *State* v. *Eldredge,* 27 Utah, 477, 76 Pac. 339.

The cases speak for themselves, and this opinion would not be strengthened by our attempting an elaborate review.

From the showing made by the admitted facts, plaintiff, as a taxpayer of the city would have little or nothing to gain even if we were permitted to consider the case from the standpoint of what would be least burdensome to him. It is admitted that, if the agreement with the county is forbidden or restrained and the improvement is not made as contemplated, the city will be compelled, at its own expense, to construct the bridge across the Jordan river at a cost of nearly $11,000, and make immediate temporary repairs to the street at a cost of nearly $5,000, besides the annual cost of sprinkling, to the extent of several hundred dollars. These sums the city has the undoubted right to expend, and it is admitted that it will expend them unless the agreement with the county for the permanent improvement is permitted. It is a simple matter of addition to demonstrate that these sums aggregate approximately the same amount as the city will have to pay for the permanent improvement sought by this action to be restrained. These considerations have no logical bearing upon the question presented here, but they at least serve to emphasize the fact that there is no question of hardship to the plaintiff involved.

For the reasons stated, it is ordered that the temporary writ be quashed and a permanent writ denied. Defendant to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.