(No. 5502. February 9, 1931.)

VILLAGE OF OAKLEY, IN CASSIA COUNTY, STATE OF IDAHO, a Municipal Corporation, and BERNICE B. HOWELLS, Respondents, v. B. F. WILSON, as Auditor of Cassia County, State of Idaho, and LAWRENCE C. DUNN, as Tax Collector of Cassia County, State of Idaho, Appellants.

[296 Pac. 185.]

336

S. T. Lowe and C. W. Thomas, for Appellants.

Frank L. Stephan and Ray D. Agee, for Respondents.

338

GIVENS, J.—January. 6, 1925, the village trustees of Oakley initiated proceedings which. resulted in the issuance on the 14th of March of the same year, of municipal bonds for the purchase of a waterworks system. January 28, 1925, appellants commenced under C. S., sec. 4101, amended Session Laws 1921, page 258, chapter 111, proceedings to detach their farm. lands theretofore within the village boundaries, judgment of detachment being entered November 11th. The County Auditor did not charge on the tax-rolls against this property, which we will refer to as the detached property, the municipal tax levied to pay the interest, and possibly principal, of the bonds for the years 1926, 1927 and 1928. These items not being on the tax-rolls were therefore not collected by the county treasurer, and on June 21, 1929, the instant *mandamus* action was commenced by the village to compel the county treasurer to return the tax-rolls to the auditor, and the auditor to compute the taxes and extend the same upon the tax-rolls against the detached lands.

The computation and extension of village taxes upon the general tax-roll is no part of the levy, but a purely ministerial duty, a mere step in collection, and where a public officer is by law enjoined to perform a ministerial duty within a time certain and neglects to perform it, he may do so, after the expiration of the prescribed time, unless prohibited by some negative language in the statute, or too late to accomplish the desired result. (*Standrod v. Case*, 24 Ida. 365, at 375, 133 Pac. 651; *Quirk v. Diana Mines Co.*, 34 Ida. 30, 198 Pac. 672; *Hooker v. Bond*, 118 Mich. 255, 76 N. W. 404; *State v. Phillips*, 137 Mo. 259, 38 S. W. 931; *State v. McClain*, 132 Or. 561, 286 Pac. 590.) Remedy by action on an official bond would in this case be neither speedy nor adequate. (*Babcock v. Goodrich*, 47 Cal. 488; *State v. Slusher*, 117 Or. 498, 58 A. L. R. 114, 244 Pac. 540, 542; 38 C. J. 564.) Hence contrary to appellants' contention, mandate will lie herein.

The second paragraph of section 4105 clearly states that the tract to be detached shall be detached on the date of judgment, and be freed from the government of the corporation from that date, and section 4106 must refer to that date when it says: "at the time of its (the land) separation therefrom."

The language is clear and unambiguous, and under such circumstances there is no occasion for construction. (*State v. Jutila*, 34 Ida. 595, 202 Pac. 566; *Drainage Dist. No. 2 v. Ada County*, 38 Ida. 778, 226 Pac. 290; *State v. Armstrong*, 38 Ida. 493, 33 A. L. R. 835, 225 Pac. 491; *State v. Malcom*, 39 Ida. 185, 226 Pac. 1083.)

The matter of detachment is purely legislative, and the legislature has the right to fix whatever date they see fit as the date of detachment, which is the date of judgment, and we deem it binding herein, hence the lands had not been detached when the bonds were issued.

Appellant contends that proceedings of the board of trustees initiating the bond issue and levying the tax upon the detached lands were void for the reasons that: While

the board consisted of 5 members, the rules were suspended and votes taken upon the ordinance calling the bond election, etc., by only 3 members of the board, only 4 being present, ¾ of those present, but not ¾ of the total number of the board, and that under section 4062, C. S., such action was not authorized. Section 3904, C. S., however, provides that at a meeting of the board a majority of the trustees constitute a *quorum* to do business. If a majority of the board is a *quorum* to do business, ¾ thereof would have the right to suspend the rules, otherwise section 3904 would be ineffective and such construction is not out of harmony with section 4062, *supra*.

Appellants further contend that the annual appropriation bill for 1925 did not contain an appropriation for the payment of the bonds, or interest thereon. Section 4053, C. S., requiring the annual appropriation by the last paragraph clearly exempts a bond issue authorized by an election from the operation of the statute. The bonds herein were voted at an election called for that purpose, and the ordinance initiating the bonds (Plaintiffs' Exhibit ''G,'' sec. 4), provided for an annual levy and appropriation to provide for the payment of principal and interest for that year and the years thereafter. Each year thereafter an estimate was made, and the yearly appropriation ordinance passed, making the necessary levy and appropriation, and the statutes were thus complied with.

Appellant further contends that the ordinance calling the bond election and the ordinance making the levies to pay the interest and sinking fund on these bonds, specified that the levy was made on ''all taxable property in the original Village of Oakley, Idaho,'' and that because the general taxes for the year were levied on all taxable property within said village as it now exists, the ordinance was uncertain, since it is contended that the original village did not contain all the detached lands. The situation arises by reason of the fact that in 1896 in the county commissioners' proceedings for Cassia county, book 2, page 357, appears a petition

and approval thereof, to incorporate the Village of Oakley, with territory which does not embrace all of the detached land. The record is silent as to whether the village functioned after that date. April 11, 1904 (Commissioners' Proceedings, book 3, page 136), the commissioners granted a petition for the incorporation of the Village of Oakley, including all of the detached lands, without reference to the preceding organization. Senate Bill No. 32, Session Laws 1905, page 330, made legal and valid the incorporation of 1904, and from the record it appears that since that time such has been considered by the Village, and its inhabitants as the original incorporation. The court was justified in determining that the ordinances in question referred to the description contained in the incorporation of 1904, and not 1896, which conclusion is further strengthened by the fact that the bonds were stated to be general obligations of the village without restriction to any area.

This ordinance was sufficiently clear and explicit. (*Beem v. Davis,* 31 Ida. 730, 175 Pac. 959; *State v. Holder,* 49 Ida. 514, 290 Pac. 387.)

The bonds being general obligations of the Village, and valid levies having been made against the detached lands before their detachment, and only ministerial acts of the officers requested by respondents, the judgment is affirmed.

Costs awarded to respondents.

Lee, C. J., and Varian, J., concur.

McNAUGHTON, J., Dissenting.—I cannot concur. My dissent, however, is not technical but is upon the sole ground that under the facts of this case, I cannot escape the conclusion that the detached lands were not liable at all for the bond indebtedness on account of which the levy in question was made.

To understand the case, I think more of the facts relative to the bond issue should be considered than are set forth in the opinion, and somewhat closer attention paid to the nature of detachment proceedings.

On January 6, 1925, the Village trustees of Oakley passed an ordinance calling a special election for February 9, 1925, to authorize the issuance of $35,000 of municipal bonds with which to purchase a waterworks system and plant, then operated by a private company.

On January 28, 1925, a petition to detach from the Village of Oakley an area of farm tracts, consisting of about 1300 acres, was filed pursuant to C. S., sec. 4101, as amended by chap. 111, Sess. Laws. 1921. Hearing on this petition was resisted by the Village and others. On March 19th, the hearing was adjourned to April 30th, on which date the hearing was had. On November 11th the judge, hearing the proof, found for the petition and entered judgment of detachment.

At the election of February 9th, the Village trustees were authorized to purchase the waterworks in question and make certain improvements and extensions of the system, and the Village board was authorized to issue its municipal bonds therefor. On February 18th the trustees called for bids on such bonds. On the 14th of March it accepted the bid of the American National Company and authorized the issuance and delivery of the bonds. The record does not show when the plant, for which $20,000 of the bond funds were paid, was purchased or when the other $15,000 of the bond funds were expended in improvements and extensions. Apparently this was not done before the decree of separation was signed and filed.

In September of 1926, 1927 and 1928, the Village trustees, by ordinance, levied a tax of 5.7 mills for 1926 and 1927, and of 8 mills for 1928, for the purpose of paying the interest on these bonds. The levy was against all the taxable property within the "original corporate limits of the Village of Oakley," and each year caused the same to be certified to the county auditor. The County Auditor did not compute and extend against the detached lands these levies. This action is brought to procure a writ of mandate direct-

ing the county officials to extend these bond levies against the detached lands.

Regarding the law, C. S., sec. 4101, as amended by chap. 111, Sess. Laws 1921, provides for filing the petition for detachment.

C. S., sec. 4102, provides notice to be given of the filing of the petition and the time and place of hearing on it.

C. S., sec. 4104, provides the hearing shall be before the district judge and within the corporate limits of the municipality in which the lands sought to be detached are situated.

C. S., sec. 4105, as amended by chap. 111, Sess. Laws 1921, provides in part as follows:

"If, upon the hearing, the court shall find that such tract or tracts of land are tracts containing at least five acres and are included within the corporate limits of such municipality and the lands included within such tract or tracts are used exclusively for agricultural purposes; . . . . that such lands do not receive sufficient special benefits to justify the retention of said lands within the corporate limits of such municipality, and that by the detachment of said lands the symmetry of the municipality would not be materially marred, then the judge of said court shall grant the prayer of said petition and shall enter judgment and decree accordingly; . . . .

"And said tract or tracts of land sought to be detached and for which the said judgment is entered detaching the same shall, upon the entering of said judgment, become detached from such municipal corporation and the corporate boundary line or limits of said municipality shall be deemed changed accordingly, and said tract or tracts so detached shall be free from the government of such corporation from said date.

"It shall not be necessary for the judge of the court, prior to entering his said judgment, or at any time, to make written findings of fact or conclusions of law. Within 20 days after the filing of said decree the petitioner shall file

or cause to be filed with the county recorder and with the municipal clerk a certified copy thereof.''

C. S., sec. 4106, provides:

''Such separation shall not relieve any such tract of land from its liability on account of any outstanding bonded indebtedness of such municipal corporation existing at the time of its separation therefrom.''

The vital question is, may the municipality, after filing of the detachment petition, incur bonded indebtedness for which the land after detachment shall be liable?

It seems plain that if by virtue of C. S., sec. 4106, it may do this, it is thereby given an unjust advantage whereby, not only in this case but in every case, it may defeat in part at least the very purpose of the act. For if the municipality has this power, then notwithstanding there may be no outstanding bond liability at the time the petition is filed, and under the act the land is entitled to complete relief from municipal expenditures, nevertheless the municipality, after the petition is filed, may authorize and negotiate bonds and burden the land for future years for expenditures for future municipal uses as in this case, and to that extent defeat the relief intended by the legislature.

It seems to me the first thing to examine is what rights are created by or flow from this decree entered pursuant to a hearing on the petition.

In *Lyon v. City of Payette*, 38 Ida. 705, 224 Pac. 793, 794, this court, in examining the power of the judge upon the hearing, said:

''It is fundamental that if the court, in hearing and determining the matter, exercise legislative power, the law is in contravention of article 2, section 1, of the constitution, and is void, for it is well settled that the power to establish municipal corporations and to enlarge and contract their boundaries is purely and wholly legislative. (Dillon on Municipal Corporations, 5th ed., vol. 1, p. 61, sec. 33; 19 R. C. L. 700; 12 C. J. 856.) . . . . if, in the enactment, the legislature vest no power in the courts other than to deter-

mine the existence of the facts set forth in the law itself, contingent upon the existence of which the law comes into operation, it does not constitute a delegation of legislative power.'' (Citing many cases.)

It seems clear the judge in this special proceeding is not exercising the general powers of a court pursuant to which the separation is effected. He simply applies the legislative will. The judgment entered after hearing is only a necessary step in confirming the legislative grant of a right.

The act provides the judge of the district court shall hear, and the ''regular court reporter'' shall reduce to writing, the testimony and evidence introduced. This hearing shall be conducted ''in the municipality wherein the lands sought to be detached are situate.'' The judge is not permitted to make or enter any findings of fact or conclusions of law. If the facts prescribed by the legislature existed it was ''thumbs up'' with the judge, if they did not, it was ''thumbs down'' that day in Oakley. That is all there was to his part in the matter. It seems certain the judge, the day of the hearing on this petition in Oakley, was not conducting a proceeding with the judicial power of a court of this state. The proceeding was largely a legislative function. No judicial discretion was involved, only legislative will. The rights pertaining to detachment did not spring from his judgment of separation. Nor did these rights begin with it. Under this law it is clear, if the requisite facts exist when the petition is filed, the relief to follow has already been determined and granted by the legislature, and the decree shall be accordingly. The decree can only apply the relief which has already been provided and granted by the legislature. From the act the right is wholly dependent upon the existence of the conditions defined in the statute. The right is initiated by the petition. It is confirmed by the decree. Now courts should not and as a rule will not permit an advantage to be taken between the initiation and confirmation of a right which will defeat the purpose of the statute granting the right. To avoid such injustice the doc-

trine of relation interposes. This situation frequently arises. It arose in the case of *Knapp v. Alexander-Edgar Lbr. Co.*, 237 U. S. 162, 35 Sup. Ct. 515, 516, 59 L. ed. 894, wherein the court said:

"The homesteader has a preferential right to the land, and in order to give effect to this according to the spirit of the laws it must be and is held that when he has fulfilled the conditions imposed upon him, and receives a patent vesting in him the complete legal title, this title relates back to the date of the initiatory act, so as to cut off intervening claimants." (*Citations*) "'. . . . In *Gibson v. Chouteau*, 13 Wall. (U. S.) 100, 20 L. ed. 536, the court by Mr. Justice Field, said: 'By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was had.' "

C. S., sec. 4106, is clearly a saving clause. It is generally recognized that the purpose of such provisions is not to limit the act except to save from its operation rights accrued, duties imposed, penalties incurred or proceedings commenced, where without it the act would work a destruction of such vested rights. (36 Cyc. 1164.) It is not meant to permit the alteration of existing rights. It is not meant that it should be used to give one an advantage over the other; just the reverse of that. I think the purpose and spirit of the whole act and especially C. S., sec. 4106, requires that the decree relate back to the filing of the petition with reference to the status of the land on separation. If there was no outstanding bond indebtedness on that date, for which the land was liable, I think it should be held there is no such liability after detachment on that petition. The section, in other words, saves no rights not due when the petition was filed, and the land owners' rights had accrued and were initiated.