## MORGAN v. SALT LAKE CITY et al.
No. 5171.  Decided October 3, 1931.  (3 Pac. [2d] 510.)

*Shirley P. Jones, A. W. Watson,* and *W. A. Fraser,* all of Salt Lake City, for appellants.

*McCullough & Callister,* of Salt Lake City, for respondent.

STRAUP, J.

This is an appeal from a judgment in the district court in a habeas corpus proceeding discharging the plaintiff, William Morgan, from an alleged unlawful imprisonment. In the petition for the writ is set forth an ordinance of Salt Lake City relating to card room and card club licenses. So far as material the ordinance provides:

"Section 1259. It shall be unlawful for any person to keep, maintain or operate in Salt Lake City any room open to the public in which games of cards are played or any table in any such room on which games of cards are played without first obtaining a license.

"It shall be unlawful for any person to keep, maintain or operate in Salt Lake City any room where cards are played, or any table on which cards are played, where charge is made for the use of the room, use of the table, or for the privilege of playing on such table or in such room, without first obtaining a license."

"Section 1260. It shall be unlawful for any club, association or corporation to keep, maintain or operate for the use of its members or guests any room in Salt Lake City in which games of cards are played or any table on which games of cards are played without first obtaining a license so to do."

Section 1264 provides for an annual license fee of from $150 to $400.

In the petition it further is alleged that in a prior proceeding in the district court the ordinance, especially section 1259, was declared void; that notwithstanding such decision the defendants caused a complaint to be filed in the city court of Salt Lake City against the plaintiff charging him with a violation of section 1259 of the ordinance; the charging part of the complaint being as follows: "That the defendant (the plaintiff herein) did unlawfully then and there keep, maintain and operate in a certain building situ-

ated at 18 East Second South Street in this city a certain table in a room in said building open to the public on which table a game of cards was then and there being played by seven persons whose names are unknown to this complainant without first obtaining a license to do so as required" by the ordinance referred to and contrary to the provisions of section 1259 of chapter 33 of the Revised Ordinances of the city.

It then is alleged that upon such complaint the plaintiff was arrested, imprisoned, and restrained of his liberty, and that the imprisonment and the restraint were unlawful, upon the ground that the ordinance upon which the complaint in the city court was predicated was void and theretofore had been declared void by a prior decision of the district court, upon the ground that the city was without power or authority to pass the ordinance.

The defendants answered admitting the material allegations of the petition, justified the imprisonment and detention under the ordinance, alleged its validity, and thus denied that the imprisonment or restrain was unlawful and denied the alleged prior adjudication. On a hearing the court held the ordinance void and discharged the plaintiff from custody. The defendants appeal.

It is important to notice that two distinct offenses are stated in section 1259 of the ordinance. By the first paragraph of the section it is declared to be "unlawful" for any person to keep, maintain, or operate any room "open to the public in which games of cards are played," or any table in such room on which games of cards are played, without first obtaining a license. To do that and only that is by such portion of the ordinance declared to be a punishable offense. The second paragraph declares it also to be "unlawful" for any person to keep, maintain, or operate "any room" (whether open to the public or not) where cards are played, or any table on which cards are played, "where charge is made for the use of the room, use of the table or for the privilege of playing on such table in such

room," without first obtaining a license. It thus is seen that each paragraph declares all the requisites of an offense and that each is complete within itself. In considering the requisite elements of the one the other need not be looked to.

It is clear that the plaintiff was restrained and confined upon an arrest and imprisonment for an alleged violation of the provisions of the first paragraph of the section and for an alleged offense therein stated. That is manifest from a comparison of the complaint with the ordinance. As is seen, the complaint is in the very language of such provision of the ordinance. By the complaint and upon which he was arrested and confined, the plaintiff was not charged with a violation of any other provision or part of the ordinance. Not anything was omitted from or is wanting in the complaint to charge the offense declared by the first paragraph of the section. If the ordinance in such particular is valid, the complaint stated a public offense. If it is not, the complaint stated no offense. Hence, the question is: Is such portion of the ordinance, the violation of which was charged and for which the plaintiff was arrested and imprisoned, valid or invalid? We, in this proceeding, are therefore not concerned with the validity or invalidity of other portions of the ordinance, the violation of which was not charged nor attempted to be charged nor for which the plaintiff was arrested and restrained of his liberty.

That the writ of habeas corpus lies to release and discharge from custody one imprisoned or confined under a void ordinance is not questioned. By the plaintiff it is asserted and the court below held that no power ■ or authority of law was conferred on the city to pass or promulgate such an ordinance as was alleged the plaintiff had violated and under which he was confined and his liberty restrained. It is conceded, and as is stated in the case of *American Fork City* v. *Robinson* (Utah) 292 P. 249, 250:

"That the powers of the city are strictly limited to those expressly granted, to those necessarily or fairly implied in or incident to the

powers expressly granted, and to those essential to the declared objects and purposes of the corporation, is settled law in this state."

In defense of the validity of the ordinance in question and in support of the power and authority of the city to pass such an ordinance, the defendants point to Comp. Laws Utah 1917, §§ 570x4, 570x38, 570x39, and especially to section 570x86. Section 570x4 merely confers power on the city "to fix the amount, terms, and manner of issuing licenses." Section 570x38 relates to powers and authority conferred upon municipalities to license, tax, and regulate peddling, pawnbrokers, banks, brokers, employment agencies, bathhouses, restaurants, and fifty or more other enumerated matters and things; to license, tax, and regulate the business conducted by hackmen, truckmen, etc., merchants, butchers, druggists, etc., and the running of automobiles, street and steam railways, etc., in all an enumeration of about seventy-five or more matters and things; but neither by enumeration nor classification is included the subject of the ordinance or to which it in anywise relates. Section 570x39 confers power to license, tax, regulate, and suppress billiard, pool, etc., dancing halls and dancing resorts, etc.,

"and all places or resorts to which persons of opposite sexes may resort for the purpose of dancing or indulging in any other social amusements."

It is not seriously contended that the subject of the ordinance is included within either sections 570x38 or 570x39. What chiefly is contended is that it is included within section 570x86. That section confers power on municipalities:

"To raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city, and regulate the same by ordinance. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."

It is claimed by the plaintiff and denied by the defendants that in determining the kind of "business" referred to in section 570x86, and on which a license fee may be

imposed and collected and which may be regulated, resort must be had to section 570x38, defining the kind of business and the matters and things upon which a license fee may be imposed and collected. By the defendants it is contended that section 570x86 gives the city power by ordinance to impose and collect a tax or license fee on any kind of business whether included or not within the provisions of section 570x38. And so, numerous cases and authorities are cited by them to the effect that in the absense of constitutional inhibitions or restrictions it is within the power of the Legislature in the exercise of its police power or for the purpose of revenue to itself levy and collect taxes or license fees on any business or corporation, or to delegate like power and authority to municipalities. All that may here be readily conceded. The crucial question, however, is as to whether the Legislature has delegated to municipalities authority and power to levy or collect a tax or license fee as to or on such a subject dealt with by the portion of the ordinance under consideration.

An identical section of the statute corresponding with the present section 570x86 was before this court in the case of *Ogden City* v. *Boreman,* 20 Utah 98, 57 P. 843, 844. There the city passed an ordinance requiring an annual license fee of $10 of "every person practicing the profession of a lawyer, abstractor, dentist, physician, or surgeon" in the city of Ogden, and made "it unlawful for any person to carry on a business without first procuring a license." The person there arrested and tried as carrying on a "business" or "profession" without a license was a lawyer. The district court discharged him on the ground that no power or authority was conferred upon municipalities to pass such an ordinance and held the ordinance void. That ruling was affirmed by this court. There, as here, the ordinance was defended under a section of the statute corresponding and identical with section 570x86. Thereunder it was claimed that the Legislature had conferred power on municipalities to pass the ordinance and to levy and collect a license fee or tax on any business within the limits of the city, and that

practicing law was such a business and was embraced or included within the term "business" referred to in the section corresponding with section 570x86. But this court held that section must be considered in connection with the section corresponding with section 570x38, which so far as here material was identical with it, and of which this court stated that

"This section does not embrace the right to license lawyers. These provisions of the statute must be read and construed with relation to each other."

Thus the holding was that inasmuch as the profession or business of a lawyer was not included or embraced in the section corresponding with the present section 570x38, no power or authority by that section, or by the section corresponding with section 570x86, was conferred on the municipality to pass the ordinance there in question. That such was the holding cannot be doubted. Further observations were there made that in 1888 under the territorial laws of Utah the statute expressly conferred power on municipalities to impose and collect a license fee on lawyers, that in 1898 that law was repealed and subsequently sections corresponding with sections 570x38 and 570x86 were enacted and which was referred to as a further reason why the Legislature in passing such subsequent sections did not intend that the business or profession of a lawyer should be included or embraced within them. Such reference or observation is now pointed to as a distinguishing feature between that case and the one in hand. The reference so made by the court in no particular modified or limited the unequivocal holding that the sections corresponding with sections 570x38 and 570x86 must be considered and construed together and that in the former the profession or business of a lawyer was not embraced or included within it, and inasmuch as such a business was not so included or embraced therein, no power or authority was conferred on the municipality to enact the ordinance there in question. The section corresponding with section 570x38 is set

forth in the opinion in the Boreman Case. No one reading it may successfully assert that the profession or business of a lawyer is embraced or included within it. This court in unmistakable terms said it was not, and as the section corresponding with section 570x86 was required to be considered in connection with it, the conclusion was reached and the holding made that no power or authority was conferred on the municipality to pass the ordinance.

We now look at the matter in hand. What here is the subject of the ordinance upon which a license fee was imposed and required? To keep, maintain, or operate a room in a building open to the public in which games of cards are played or any table in any such room on which games of cards are played. With what was the plaintiff charged for which he was arrested and imprisoned? Maintaining and operating a certain table in a room in a building open to the public on which table a game of cards was then and there being played by seven persons, without first obtaining a license so to do as required by the ordinance. The question is: Are such things enumerated in the ordinance and charged in the complaint embraced or included within section 570x38 conferring power on municipalities to levy and collect a license fee on them? Even the defendants do not contend that they are. A reading of the section clearly shows that they are not. But, assert the defendants, such things referred to in the ordinance and charged in the complaint upon which the plaintiff was arrested is a "business," and hence ample power is conferred on the city by section 570x86 to license and collect a fee with respect thereto. There are two answers to that: First, and as held by this court, section 570x86 must be considered and construed in connection with section 570x38, and if the subject of the ordinance is not included or embraced, as it clearly is not, within that section, no power or authority is conferred on the municipality to pass the ordinance. Second, no business of any kind is characterized by the ordinance under which the plaintiff was prosecuted or is charged in the complaint on which he was arrested

and confined. What ordinarily is meant by the term "business"? It is a pursuit or occupation. It denotes the employment or occupation in which a person is engaged to procure a living. It is synonymous with calling, occupation, or trade, and is defined as any particular occupation or employment habitually engaged in for a livelihood or gain. Words and Phrases, First, Second and Third Series. The ordinance merely describes or characterizes acts or conduct, not a business, and, too, acts of mere amusement or sociability. The portion of the ordinance which it was charged the plaintiff had violated is complete within itself. It declares it to be unlawful to do the acts or things therein enumerated without first obtaining a license. Statutes and ordinances declare it unlawful to fish or kill game without first obtaining a license. No one would hardly contend that such a statute or ordinance characterizes a business, or that one charged with fishing without a license was charged with conducting a business of fishing. In such case, as under the ordinance in question, it is the commission of a single act or transaction enumerated therein which constitutes a violation of it. And so is it charged in the complaint under which the plaintiff was arrested and imprisoned. To construe the portion of the ordinance under which the plaintiff was prosecuted and which it was alleged he had violated as characterizing a business, is to give its language a strained and unwarranted meaning.

Though the language of such portion of the ordinance was susceptible of being characterized as a business, yet we look in vain for anything in section 570x38 which includes or embraces such a business. If, as this court unequivocally held, the business of a lawyer is not embraced or included within such section, certainly what is characterized by the portion of the ordinance in question, though it be denominated a "business," is not such a business as is embraced or included within section 570x38.

Thus let the judgment of the court below be affirmed, with costs to the plaintiff. Such is the order.

ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

BATES, District Judge (dissenting).

The petitioner, William Morgan, was arrested by the police department of Salt Lake City, Utah, upon a complaint issued against him out of the city court of Salt Lake City, for violating section 1259 of the Revised Ordinances of Salt Lake City.

An ordinance of Salt Lake City was in force at the time the complaint was filed and the defendant arrested which reads as follows:

Section 1259: "It shall be unlawful for any person to keep, maintain or operate in Salt Lake City, any room open to the public in which games of cards are played or any table in any room on which games of cards are played without first obtaining a license.

"It shall be unlawful for any person to keep, maintain or operate in Salt Lake City, any room open to the public where cards are played or any table on which cards are played where charge is made for the use of the room, use of the table, or for the privilege of playing on such table or in such room without first obtaining a license."

Section 1264: "The yearly license fee for conducting card rooms or tables for the playing of cards shall be (here follows an enumeration of fees depending on the number of tables)."

The charging part of the complaint under which Mr. Morgan was arrested is as follows:

"Said defendant did unlawfully then and there keep, maintain and operate in a certain building situated at 18 East Second South Street, in this city, a certain table in a room in said building open to the public on which table a game of cards was then and there being played by seven persons whose names are unknown to this complainant, without first obtaining a license to do so, as required by the Revised Ordinances of Salt Lake City, Section 1262 of the year 1920, and Section 1264, Bill Number 9 of March 2, 1922, contrary to the provisions of Section 1259 of Chapter 33 of the Revised Ordinances of Salt Lake City, in such case made and provided."

Before the case against Mr. Morgan came on for trial in the city court, and without his making any appearance by demurrer or otherwise, and without questioning the sufficiency of the complaint, or the validity of the ordinance, in the court issuing the warrant of arrest, he sued out a

writ of habeas corpus in the district court of Salt Lake county. After hearing thereon, the district court entered its judgment as follows:

"It is ordered, adjudged and decreed that the said writ of habeas corpus be granted, the plaintiff discharged and the action dismissed."

From this judgment the city has appealed. It is suggested that because the complaint is drawn in the language of the first paragraph of the ordinance, that we are not concerned with the validity or invalidity of the second paragraph thereof. If this court is justified in conclusively presuming from the record in this case that the defendant was arrested for violation of the first paragraph of the ordinance, and that only, it is then apparent that the entire proceeding is void for the reason that the municipality was without power to license, tax or regulate the things therein referred to. Under such conditions the plaintiff was entitled to his discharge by habeas corpus.

But in the writer's opinion, we are not justified in indulging any such presumption. As pointed out by Justice STRAUP, the unlawfulness of the restraint alleged by plaintiff is based on the claim that section 1259 is void. The claim made is not that the first paragraph is void, but that the section in its entirety is void, for the reason that the city was without power or authority to pass the ordinance. The affidavit of the petitioner recites that the same court and judge to whom he addressed his petition in this case had held section 1259 void; that notwithstanding said decision and subsequent thereto, the defendants caused petitioner to be arrested for violating said section, and the city ordinances hereinabove referred to, and particularly section 1259, upon which said complaint is predicated, and upon which the warrant of arrest was issued, are null and void, for the reason that the municipality had no power to pass such ordinance and for the further reason that the said court had judicially declared said ordinance invalid. Certainly it cannot be presumed that the trial court had in mind anything less than the invalidity of the entire ordi-

nance. That was the case made by petitioner. Nowhere throughout the entire proceeding from the filing of the complaint in the city court, down to and including the final arguments in this court, both oral and written, has it been suggested by the parties to the action that the case should be ruled by the first paragraph of the section and that only. That the petitioner believed the case should be ruled upon the question of the validity of section 1259 in its entirety, and not upon the first paragraph thereof, is evident from the following concluding language in his brief:

"Plaintiff and respondent contend that the complaint filed in the City Court of Salt Lake City, upon which the warrant of arrest of the plaintiff was issued does not state facts sufficient to constitute a public offense; that said complaint does not set forth a violation of the provisions of the city ordinances hereinabove referred to and particularly Section 1259. There is no allegation in said complaint that said William Morgan kept, maintained, or operated in Salt Lake City, any room where cards were played or a charge was made for the use of a table or for the privilege of playing on such table or in such room without first obtaining a license as provided by Section 1259. Plaintiff and respondent contend that there is no allegation in said complaint showing a violation of city ordinances and particularly 1259, even assuming that said city ordinances are good and valid."

Neither is there anything in the complaint that makes it necessary to conclude that the pleader had in mind the first paragraph only. Had the pleader so intended, it is at least probable that he would have so stated. It is true that the language of the complaint is substantially the same as the language used in the first paragraph of the ordinance, but it is also substantially the same as the language used in the second paragraph of the ordinance, excepting that it does not recite that charge was made for the use of the room or table. The complaint states that the things done were in violation of section 1259. There is no more reason under this record for saying that the pleader meant to say in violation of the first paragraph of the section, than there is for saying that he omitted to plead one of the essential ingredients of the offense actually defined in the sec-

tion referred to. Unless the entire section of the ordinance is held void, it is plain that the complaint clearly referred to an offense known to the law.

Instead of raising the question as to the sufficiency of the complaint in the usual and proper manner, the petitioner sued out a writ of habeas corpus in the district court, secured his discharge on the ground the ordinance in its entirety is invalid, and now in his brief asks the court to sustain the ruling of the trial court on the theory that the complaint does not state facts sufficient to constitute a violation of the ordinance.

But the sufficiency of the allegations of a complaint cannot be tested in a habeas corpus proceeding unless it is void for wholly failing to state any offense known to the law. That has been held in a long and uniform line of decisions. See *Bruce* v. *East*, 43 Utah 327, 134 P. 1175; 21 Cyc. 285-287. In Ex Parte *Bottjer*, 45 Idaho 168, 260 P. 1095, the court uses the following language:

"Whether by conclusion or otherwise, the information did in fact charge embezzlement, and it is evident from all the allegations of the information that it was the pleader's intent to charge a violation of section 5279, a crime over which the court had jurisdiction; hence the information is not vulnerable to attack by habeas corpus."

The question of the violation of section 1259, if valid, is one over which the city court had jurisdiction, and the filing of the complaint charging a violation thereof, and the subsequent arrest of the accused, was sufficient to set the judicial mind in motion to determine whether the fact alleged constituted a violation thereof. If we assume that the ordinance is valid, then it of necessity follows that the court had jurisdiction to determine whether the complaint charged an offense under that section. Under such condition it ought not be robbed or divested of its right to proceed by habeas corpus.

In a recent case, *Areson* v. *Pincock*, 62 Utah 527, 220 P. 503, 504, where the petitioner urged that the complaint under which he was arrested was insufficient to confer

jurisdiction upon the court, this court, speaking through Chief Justice Cherry, said:

"But the question is not one of jurisdiction, and may not be inquired into in habeas corpus proceedings. It cannot be denied that the court had jurisdiction generally to try the issues and make the order complained of. Habeas corpus takes cognizance only of defects of a jurisdictional character, which render the proceeding not merely voidable, but absolutely void."

In the same case the court quotes with approval the following language from the annotation following Ex parte *Robinson*, 73 Fla. 1068, 75 So. 604, L. R. A. 1918B, 1148:

"It has been said that, if from the accusation the court can deduce that the prosecutor intended to charge an act which is a crime, habeas corpus will not lie, however defectively the act is described; also that if the indictment or information purports or attempts to state an offense, and the court has jurisdiction to pass upon the sufficiency of those statements, the defendants after conviction will not be released on habeas corpus; and that, 'if a criminal charge is colorable, or "sufficient to set the judicial mind in motion" or to call upon it to act, or makes some approach towards charging a criminal offense, or intimates the facts necessary to constitute the offense and a purpose to declare thereon, or tends to show a criminal offense, no matter how informal or defective, or has a legal tendency to prove each requirement of the statute, it will shield the proceedings from collateral attack. In a word, no errors or irregularities not going to the question of jurisdiction are reviewable on habeas corpus.' * * *"

Another paragraph or excerpt in the same annotation reads as follows:

"It has been held also that one under arrest is not entitled to release on habeas corpus, because of the insufficiency of the information, if by statute it may be amended, or he may be held pending the return of the second indictment or information; or if by amendment the information can be made to state an offense and the petitioner has not asked relief of any kind in the court in which the information was filed."

The question of the necessity of a person under arrest to first apply for release to the court out of which the

warrant has issued is further discussed in the same notes on page 1157 of L. R. A. 1918B, as follows:

"For instance, some cases of this kind apply merely the general doctrine that, unless there are special circumstances requiring resort to the extraordinary remedy of habeas corpus, the orderly procedure by way of demurrer, or motion to quash, and appeal or writ of error must be followed. The doctrine has been applied in cases in which the prisoner has not first invoked the decision of the trial court upon the question of the sufficiency of the indictment, by a motion to quash or otherwise. * * *"

In Ex parte *Robinson,* supra, a case in which the petitioner claimed he was entitled to discharge in habeas corpus because the complaint under which he was arrested did not charge an offense known to the laws of the state of Florida, the court used the following language:

"Where habeas corpus is invoked to obtain the discharge of a person held in custody to answer a charge of crime, it must be shown that the statute under which the charge is made is invalid, or that the charge as made is not merely defective in its allegations, but wholly fails to state any offense under the laws of the state. The writ of habeas corpus cannot be used as a substitute for a motion to quash or a writ of error or an appeal. * * *

"Some authorities hold that, where an essential ingredient of an offense intended to be charged is omitted from the indictment, the writ of habeas corpus is the proper remedy for relief from imprisonment under it; but the true rule seems to be that it is only where the facts stated in the indictment are not and cannot be so stated as to charge an offense that the prisoner may be discharged; and where the matters are of such a character that the indictment, though defective for lack of a statement of an essential ingredient of the offense, may be perfected into a sufficient accusation of crime, the prisoner should be held to abide the judgment or order of the court."

The annotator, in the same volume, after quoting the foregoing statement from the Robinson Case, says:

"Few of the cases, apparently, have in express terms discussed the effect on habeas corpus proceedings of the omission in an indictment or information of an essential ingredient of the offense; but the general principles already stated, and the conclusions reached in the various cases, seem to support the rule declared in Ex parte *Robinson.*"

Where the complaint alleges the violation of an ordinance by specific reference thereto, as is done in this case, the fact that one of the essential elements of the offense, as defined therein, is omitted, does not deprive the court of jurisdiction to proceed and ought not warrant the discharge of the defendant on habeas corpus before appealing to the court issuing the warrant of arrest by motion or demurrer. To hold otherwise would be to substitute the writ for those proceedings so well known to the law and designed and used to test the sufficiency of a complaint.

The position of the appellant is that the city had power to enact the ordinance under the provisions of section 570x86, Comp. Laws Utah 1917, which reads as follows:

"To raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city, and regulate the same by ordinance. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."

It is the theory of the respondent that this section of the statute does not authorize the enactment of the ordinance in question, because the power to license, tax, and regulate the maintaining or operating of rooms or tables where cards are played, and charge made therefor, is not mentioned in section 570x38. It seems to be their position that under authority of *Ogden* v. *Boreman,* 20 Utah 98, 57 P. 843, 844, these statutes must be construed together and that no value shall be given to section 570x86, unless the business the ordinance is aimed at is expressly included in section 570x38. At first blush, this case seems to support the position of the respondent. The city of Ogden had passed an ordinance imposing a license fee of $10 upon any person practicing the profession of law in the city. The sections of our statutes, heretofore referred to, were then in force. After quoting these sections, the Supreme Court pointed out that the sections now known as section 570x38 did not embrace the right to license lawyers, and then said:

"These provisions of the statute must be read and construed with relation to each other."

Although the case holds that the city did not have power to license lawyers under the statute now known as section 570x86, the conclusion was reached because of other facts which make the authority of but little, if any, value in determining the question now being considered. In that case this court said:

"At the same time there was in force, and the legislature re-enacted and included it in the compilation of 1888, another statute, which expressly provided that cities might impose a license fee upon lawyers.

"These provisions were in force when the Revised Statutes of 1898 were enacted, but the legislature at that time repealed the provision with reference to lawyers, and re-enacted only the general clause (subdivision 38, above referred to), providing for licensing, taxing, and regulating certain kinds of business, trades, and employments, but without mentioning the professions or lawyers therein. * * *

"By repealing the clause providing for licensing and taxing lawyers, and enacting the general clause referred to, leaving lawyers and the professions out of such re-enactment, impels the conclusion that the legislature intended to deprive the cities of the power to impose a license fee or tax upon lawyers that they had formerly posesssed. There must have been an object and purpose in this deliberate repeal in one section and omitting to insert its provisions in the act as re-enacted, having special reference to licensing and taxing in cities. And when subdivision 87 is considered with reference to subdivision 38 and the repeal of subdivision 6 of section 288, it is evident that it was not intended that lawyers should be licensed or taxed under its provisions."

In this case, we do not have any such condition. Section 570x86 is a clear and express power to raise revenue by levying and collecting a license fee, or tax on any private business. To say that the Legislature by that language means, "any private business" expressly mentioned in section 570x38 is to add words to the statute that the lawmaking body did not use, and in so doing place a limitation upon the language used, that the words themselves do not suggest. It must not be overlooked that the two sections have separate and distinct functions, and that they constitute grants of power for well recognized purposes; the one being for revenue purposes under the taxing power.

It is familiar doctrine recognized by this court that in the construction of a particluar statute, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, but as pointed out in 36 Cyc. p. 1148, the rule requiring statutes in pari materia to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and cannot be invoked where the language is clear and unambiguous.

All the authorities recognize the distinction between charter powers designed for the raising of revenue and charter powers authorizing the collection of license fees, and the regulation of many activities under the police power. This difference has been well stated by this court as follows:

"Properly speaking, a license fee or a license tax comes within and is based upon the police power of the state to regulate or to prohibit a particular business. Such a fee or tax is primarily intended to regulate a particular calling or business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue by that method of taxation. Our statute (Comp. Laws 1907, § 206x86), as amended by Laws Utah 1915, p. 168, confers power upon the cities of this state—'to raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city and regulate the same by ordinance.' * * *

"Now, we have pointed out that, under our Constitution, both an occupation tax and a license fee or tax may be imposed. We have also shown that the Legislature of this state has clearly conferred both the power to impose an occupation tax for revenue purposes and to impose a license fee or tax for the purpose of regulation under the police power, and hence the objection of want of power must fail." *Provo City* v. *Provo Meat & Packing Co.*, 49 Utah 528, 165 P. 477, 479, Ann. Cas. 1918D, 530.

In 28 Cyc. at page 745, the rule is stated thus:

"As shown by numerous adjudications municipal power to grant a license or permit, may exist under either the police power or the power of taxation, or under both; but on the other hand revenue may not be raised by police license nor police license granted under the power to raise revenue."

But the respondent stoutly insists that the revenue statute can operate only upon those things which are expressly mentioned in the subdivision granting power to regulate, upon the theory that the statutes are in pari materia, must be construed together, and that the express mention of a series of callings in section 570x38 impliedly denies the application of the revenue statute to any other calling or business.

As pointed out in *Booth* v. *Midvale City*, 55 Utah 220, 184 P. 799, this maxim, "Expressio unius est exclusio alterius," is merely a technical rule of construction. It cannot be used to thwart or subvert the obvious intention of the Legislature. It should only be resorted to when the intention of the Legislature is not otherwise plainly expressed. In another Utah case, *Utah Copper Co.* v. *Industrial Commission*, 57 Utah 118, 193 P. 24, 30, 13 A. L. R. 1367, this court, in speaking of rules of construction, says:

"The rule invoked is, after all, merely a rule of construction. That rule is, like all rules of construction, controlled by the intent of the Legislature, if that intent can be rationaly determined from the language used, considered in connection with the other provisions of the act, where the same is found."

The statute under consideration is plain, and the language clear. To limit its effect to such callings as are expressly mentioned in the preceding sections is to say that the Legislature intended that the city should have no power to collect a tax from any occupation unless they were authorized to regulate it under the police power. The grant of power to collect revenues for general municipal purposes has always been considered separate and distinct from the police powers granted. It has always been held that under the police power, the city's power to levy a license tax is limited to such sum as may be reasonably necessary for purposes of regulation. This is pointed out in the Provo Case before mentioned. There is no good reason why the city's power to raise revenue should be limited to such businesses as they

have given authority to regulate, suppress, or prohibit, where the language of the charter is broad enough to include others not included in the police power.

The word "business," as defined by Webster, is that which occupies the time and attention, or labor of men, for the purpose of profit or improvement. Business is that which engages the time, attention, or labor of any one, as his principal concern or interest. Operating a card room, or to keep tables and cards in a room or place open to the public, and to permit the public to resort there and to engage in the playing of cards for a fee, either for the right to use the room, or the table, or the cards, comes squarely within the recognized definition and meaning of the word business, just as much so as does the keeping of a theatre for the amusement of the people, the operating of a dance hall, or the dispensing of drinks to the passer-by. The statute is clear and unambiguous. There is no occasion to apply any of the rules for the construction of the statutes to determine what the Legislature meant when they enacted section 570x86. *Village of Oakley* v. *Wilson* (Idaho) 296 P. 185. It is a revenue producing statute aimed at and intended to include all kinds of business operated or conducted within a city, receiving the protection, and enjoying the benefits that come from this form of organized society.

In *Lent* v. *City of Portland*, 42 Or. 488, 71 P. 645, 646, substantially the same question as we have to determine was considered by the court. The right to collect a license fee from a lawyer was involved. Section 32, subds. 2, 3, 4, and 21, of the charter power of Portland (Laws 1898, p. 109), gave the city power to "license, tax and regulate" (and then follows a large number of specified callings in each subdivision, but neither was there any term that could be said to include the legal profession). Subdivision 33 gave the council power "to license, tax and regulate for the purpose of city revenue all such business, callings, trades and employment as the common council may require to be licensed and as are not prohibited by the laws of the state."

Counsel there, as here, urged that the latter section was limited in its operation to the things mentioned in the preceding section. In answering the contention, the court uses the following language:

"The scope of the subdivision is broad enough to include not only all such callings, trades, occupations, and employment as are mentioned in subdivisions 2, 3, 4, and 21, and the like, but all that the common council may require to be licensed under the restriction of the succeeding clause. This subdivision was designed solely for raising revenue while the others were intended as police regulations as well. Such is the feature distinguishing this from these other subdivisions, and it makes the charter regulations perfectly consistent, when construed as a whole."

I think the conclusion of the Oregon Court logical and sound, and that the same construction should be given the charter powers under consideration in this case. Such construction gives to the language in section 570x86 its plain and ordinary meaning as used in reference to the subject-matter in the mind of the Legislature and in no way lessens or modifies the effect of the police powers granted in section 570x38.

I am therefore of the opinion that section 1259 is a valid ordinance; that the complaint under which the defendant was arrested clearly alleges a violation of the ordinance, excepting for the elements of compensation, as to which it was undoubtedly the right of the city to amend; that the complaint was sufficient to vest the court with jurisdiction; and that the writ should have been denied. The judgment should therefore be reversed.

CHERRY, C. J.

I concur in the views expressed by Judge BATES in his dissenting opinion.

FOLLAND, J., being disqualified, did not participate herein.