Argued 9 February; decided 24 February, 1903.

## LENT *v.* PORTLAND.

[71 Pac. 645.]

LIABILITY OF ATTORNEYS TO MUNICIPAL LICENSE TAX.

1. An attorney at law is subject to the imposition of a license tax on his business, either by the legislature or by a municipality to which the legislature's power has been delegated, notwithstanding such attorney is duly licensed to practice law in all the courts of the state.

INHERENT POWER OF MUNICIPALITIES TO LEVY LICENSE TAXES.

2. Municipalities have no inherent power to levy or collect license fees of any kind; their powers in that direction must be either expressly granted or necessarily implied.

CONSTRUCTION OF MUNICIPAL CHARTER—POWER TO LICENSE.

3. Under a charter limiting the rate of taxation, providing that the council may license, tax and regulate certain specified occupations, and, finally, that it may "license, tax and regulate for the purpose of city revenue all such business, callings, trades and employment as the common council may require to be licensed, and as are not prohibited by the laws of the state," the words "all such" in the last clause are not limited in their application to such occupations and trades as are previously mentioned, but refer to any and all callings and trades that the council may see fit to license, and therefore include the occupation of practicing law.

LIMITING MUNICIPAL POWER TO TAX—CONSTITUTION.

4. A clause in a city charter, authorizing a city to license, tax, and regulate for the purpose of city revenue all such business, callings, trades, and

employments as the common council may require to be licensed, and as are not prohibited by the laws of the state, is not void on the ground that such subdivision authorized the licensing of trades without restriction, in violation of Const. Or. Art. XI, § 5, that incorporation acts of cities "shall restrict their powers of taxation," for there is a restriction to the purpose of city revenue, as well as one to the judgment of tue council.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is a suit by George P. Lent and others against the City of Portland and its officers to restrain the collection of a license tax assessed against plaintiffs as attorneys at law. An ordinance of the city ordains, among other things, that all persons practicing the profession of law in the city shall pay a quarterly license fee of from $1 to $15, depending upon their respective incomes for the preceding twelve months. The purpose of this suit is to enjoin the collection of such fees from the plaintiffs. There was a demurrer to the complaint, which, being overruled and plaintiffs refusing to amend or further plead, a decree was entered dismissing the suit; hence this appeal.                                              AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Edward T. Taggart.*

For respondents there was a brief over the names of *Lawrence A. McNary,* City Attorney, and *Joseph J. Fitzgerald.*

Mr. Justice WOLVERTON, after stating the facts, delivered the opinion.

1. Plaintiff's counsel do not seriously controvert the doctrine that an attorney at law is subject to the imposition of a license tax by the legislature or by a municipality having the requisite delegated authority therefrom, notwithstanding he has been duly licensed to practice law in all the courts of the state. True, such license is in a sense a regulation, its purpose being to fix a standard of learning and character for those desiring to engage in the practice, with the idea of protecting the public against the consequences of a want of professional qualifications; but the license tax, upon the other hand, is more, and is usually imposed, not so much as a regulation, as to pro-

duce revenue for the public use: Weeks, Attys. at Law (2
ed.), § 41; 1 Desty, Tax'n, p. 308; Cooley, Tax'n (2 ed.), 576;
*State* v. *Gazlay,* 5 Ohio, 15; *Goldthwaite* v. *City Council of
Montgomery,* 50 Ala. 486; *Ex parte City Council of Montgom-
ery (In re Knox),* 64 Ala. 463; *Ould* v. *City of Richmond,* 23
Grat. 464 (14 Am. Rep. 139); *Holland* v. *Isler,* 77 N. C. 1;
*Wilmington* v. *Macks,* 86 N. C. 88 (41 Am. Rep. 443). The
strong contention of counsel is that the legislature has not au-
thorized or empowered the City of Portland to impose a license
tax upon lawyers, and that the ordinance in question is there-
fore void and incapable of being enforced. This necessitates
an examination of the charter regulations bearing on the sub-
ject, and a judicial interpretation thereof, in order to deter-
mine correctly the true intendment of their enactment.

2. We may premise the examination by the observation,
without an elaboration of the principles which give it potency
and effect, that the city has no inherent power to license any
occupation, calling, or profession, or to exact a fee from any
one engaged therein, but that such power must emanate from
legislative authority, plainly and unmistakably delegated; that
is to say, it must be found in the charter, either in express
terms or by necessary implication from the nature of the
grant; and, when the limit prescribed therein is reached, the
power is exhausted: *Corbett* v. *Portland,* 31 Or. 407 (48 Pac.
428) ;*Wilkie* v. *Chicago,* 188 Ill. 444 (58 N. E. 1004, 80 Am. St.
Rep. 182).

3. By subdivision 1 of section 32 of the charter (Laws 1898,
p. 101), the common council is invested with power and author-
ity to assess, levy, and collect taxes for general municipal pur-
poses, not to exceed eight mills upon the dollar, upon all prop-
erty, both real and personal, that is taxable by law for city and
county purposes, and thereof to set apart not to exceed one
and one half mills for lighting the streets, two mills for the
fire department, one and three fourths mills for the mainte-
nance of the police department, one fourth mill for the repair
of streets, and the remaining two and one half mills for the

payment of interest on the bonded indebtedness of the city. By subdivision 2 of said section it is accorded the power and authority "to license, tax, and regulate brokers, wharfingers, auctioneers, drummers, hawkers, peddlers, pawnbrokers, ticket brokers and scalpers, places of public amusement or entertainment, including theaters, operas, exhibitions, shows, and the like; hotel, tavern and boarding-house keepers and runners, steamship and steamboat runners, junk dealers, dealers in secondhand articles or merchandise, the keepers of billiard tables, bowling alleys, and shooting galleries, and for the purpose of this act, to define and declare what constitutes any of such professions, callings, employments, or places of amusement or entertainment." By subdivision 3, "to license, tax, and regulate livery or boarding stables, hacks, cabs, wagons, carts, hackneys, carriages, trucks, drays, or other vehicles used for transportation of persons or passengers, or goods, wares, or merchandise, earth, rock, ballast, building material, or other articles within the limits of said city, either with or without hire, and to prescribe the rate to be charged for such transportation." By subdivision 4, "to license, tax, regulate, and restrain bartenders, saloon keepers, dealers in and manufacturers of spirituous, vinous, or malt liquors, barrooms, drinking shops, or places where spirituous, vinous, or malt liquors are kept for sale or in any manner disposed of, and the sale and disposal thereof; all offensive and dangerous trades, employments, or businesses. and for the purpose of this act to define and declare who is a bartender, saloon keeper, or dealer in spirituous, vinous, or malt liquors; and what is a barroom, drinking shop, or place where spirituous, vinous, or malt liquors are kept for sale or disposed of, and what are offensive and dangerous trades, employments, or businesses." By subdivision 21, "to license, tax, control, and regulate washhouses and laundries, and to provide for the exclusion from the city limits, or any part thereof, of washhouses, laundries, and slaughterhouses;" and, by subdivision 33, "to license, tax, and regulate for the purpose of city revenue all such business, callings, trades, and employment as

the common council may require to be licensed and as are not prohibited by the laws of the state.''

All these subdivisions contain specific grants of power; that under the first being limited to a levy of eight mills on the dollar upon all property, both real and personal, taxable by law within the city, and that under the last-named being restricted for the purpose of city revenue. The other four contain the usual authorization to license, tax, and regulate the business, callings, trades, and occupations therein enumerated, and such like, without especial restriction. It was not intended that all the city revenues should be derived from the eight-mill tax upon real and personal property. This is apparent from the authorization accorded the city council to devote the entire fund to be derived therefrom to specific purposes, which do not comprehend all the needs of the city. But it was designed that the city should derive its revenues from specific as well as from general taxes, and to augment them was manifestly one of the purposes of the adoption of subdivisions 2, 3, 4, 21 and 33. The first four of these subdivisions authorize as well an exercise of the police power. Not so with the last named. The power is there restricted to the one purpose, as we have previously indicated. All these subdivisions should be construed *in pari materia,* being component parts of the same act, and effect given to each, unless there is found to be a positive repugnancy to the general intent. It is stoutly insisted that, by the use of the words ''all such,'' preceding ''business, callings, trades, and employment,'' etc., the application of the provision is restricted to such business, callings, trades, and occupations as are mentioned in subdivisions 2, 3, 4 and 21, and the like, and that, under the rule *ejusdem generis,* it could not by any reasonable interpretation be held to include the legal profession. We are of the opinion, however, that it was not intended that these words should have any such signification. They were employed as indicative of qualification with reference to that subdivision only, and their scope cannot be otherwise extended. The reading is plain and the meaning manifest. ''All such busi-

ness, callings, trades, and employment as the common council may require to be licensed and as are not prohibited by the laws of the state,'' the two latter clauses alone setting the limit of the delegated power. The scope of the subdivision is broad enough to include not only all such callings, trades, occupations, and employment as are mentioned in subdivisions 2, 3, 4 and 21, and the like, but all that the common council may require to be licensed under the restriction of the succeeding clause. This subdivision was designed solely for raising revenue, while the others were intended as police regulations as well. Such is the feature distinguishing this from these other subdivisions, and it makes the charter regulations perfectly consistent, when construed as a whole. For cases of some analogy in support of this view, see *Fleetwood* v. *Read,* 21 Wash. 547 (58 Pac. 665, 47 L. R. A. 205) ; *San Jose* v. *San Jose R. Co.* 53 Cal. 475.

4. Another question is presented, relative to the constitutionality of said subdivision 33, in that it is not restrictive of the amount of taxes to be imposed thereby, as required by the fundamental law of the state, Art. XI, § 5. As was said by Mr. Justice BREWER, now of the Supreme Court of the United States, in *City of Newton* v. *Atchison,* 31 Kan. 151, 157 (1 Pac. 288, 47 Am. Rep. 486) : ''If it were true that there was absolutely no restriction, it might well be held that the power was not granted; and yet there are very respectable authorities, and indeed the weight of authority seems to be to the effect, that it is purely a matter of legislative discretion;'' citing 1 Dillon, Mun. Corp. (3 ed.), § 50; *Hill* v. *Higdon,* 5 Ohio St. 248 (67 Am. Dec. 289) ; Cooley, Tax'n, 252. But we have not far to look to satisfy the consensus of opinion relative to the subject. Subdivision 33 itself confines the tax to the purpose of city revenue, and by section 33 it cannot be levied except by ordinance adopted by a majority vote of the common council, duly recorded. This restriction may be said to be slight, but, the legislature having the discretion, the courts cannot intervene to control it and to direct what restriction shall be sufficient.

See, further, *Hines* v. *City of Leavenworth,* 3 Kan. 186, 203; *People* v. *Mahaney,* 13 Mich. 481; *Bank of Rome* v. *Village of Rome,* 18 N. Y. 38.

These considerations dispose of the several objections interposed to the validity of the ordinance complained of, and, finding them not well assigned, the judgment·of the trial court will be affirmed.        AFFIRMED.