Argued February 6; affirmed February 13, 1934

# CITY OF KLAMATH FALLS *v.* OREGON LIQUOR CONTROL COMMISSION ET AL.

(29 P. (2d) 564)

*Elton Watkins,* of Portland (A. L. Leavitt, of Klamath Falls, on brief), for appellant.

*George Neuner* and *Jay Bowerman,* both of Portland, for respondents.

BELT, J. This is a suit to enjoin the defendant officials from enforcing chapter 17, Laws of Oregon for 1933 (2d Sp. Sess.), known as the "Oregon Liquor Control Act", on the ground that it is unconstitutional.

The circuit court sustained a general demurrer to the complaint, and, upon refusal of the plaintiff to plead further, dismissed the suit. Plaintiff appeals.

It appears from the allegations of the complaint that the city of Klamath Falls, prior to the above legislative act, enacted an ordinance purporting to regulate, license, and control the sale, buying, and transportation of alcoholic liquors within its corporate limits. Such ordinance is in direct conflict with the Oregon Liquor Control Act which purports to vest exclusive authority upon a commission to control and regulate the sale of alcoholic beverages throughout the state. Thus the question is presented: Is the ordinance of the city of Klamath Falls supreme, or is it subordinate to the general law of the state?

The principal contention of the city is that the Oregon Liquor Control Act contravenes Art. XI, section 2, of the Oregon Constitution, which provides as follows:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon, and the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the state of Oregon."

The city urges that, under and by virtue of the above constitutional provision, generally referred to as the "Home Rule Amendment", it has "exclusive

power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors" within its boundaries.

Defendants assert that the above constitutional provision, so far as it purports to delegate authority to municipalities to control and regulate the sale of alcoholic beverages, has been impliedly repealed by Art. I, section 36, of the Oregon Constitution, initiated by the people on November 3, 1914, which provides:

"From and after January 1, 1916, no intoxicating liquors shall be manufactured, or sold within this state, except for medicinal purposes upon prescription of a licensed physician, or for scientific, sacramental or mechanical purposes.

"This section is self-executing, and all provisions of the constitution and laws of this state and of the charters and ordinances of all cities, towns and other municipalities therein, in conflict with the provisions of this section, are hereby repealed."

And by Art. I, section 36a, of the Oregon Constitution, adopted November 7, 1916, which reads:

"No intoxicating liquors shall be imported into this state for beverage purposes.

"This section is self-executing, and all provisions of the constitution and laws of this state and of the charters and ordinances of all cities, towns and other municipalities therein, in conflict with the provisions of this section, are hereby repealed."

Defendants further contend that, assuming Art. XI, section 2, of the Constitution has not been repealed, the city of Klamath Falls is nevertheless "subject to the constitution and criminal laws of the state of Oregon" and that the Oregon Liquor Control Act is a criminal law.

Art. XI, section 2, of the Constitution, or the Home Rule Amendment, has many times been before

this court for construction and interpretation. It is fundamental, whether in the construction of a statute or a constitutional provision, that the guiding star of the court should be the intention of the law-maker. All other rules of construction are subordinate. To ascertain and give effect to the intent of the framers of the constitutional amendment and of the people who adopted it, as well as to those amendments alleged to be in conflict therewith, the court should constantly keep in mind the object sought to be accomplished and the evils, if any, sought to be remedied. We may well, therefore, turn to the legislative history of the Home Rule Amendment upon which plaintiff relies.

The control and regulation of alcoholic beverages always has been and no doubt ever will be a vexatious question, so long as mortal man is prone to err. It is a social problem which has long been before the people for solution. Like Banquo's ghost, it will not down. Art. XI, section 2, as adopted by the people in June, 1906, was as follows:

''Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon.''

At the same election, Art. IV, section 1a, of the Constitution was adopted, conferring upon the people the power to initiate laws and to refer acts of the legislature to a vote of the people for their approval or rejection. The initiative and referendum powers were also reserved to the legal voters of every municipality ''as to all local, special, and municipal legislation''.

In 1910, Art. XI, section 2, was amended by adding the following provisions:

"and the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the state of Oregon."

At the time of the constitutional amendment in 1910, the local option liquor law had been in effect for a period of about four years. Under the operation of this law chaos arose. Often there was a conflict of opinion between urban and rural communities as to the method of dealing with the liquor problem. Indeed, even in the same municipality, the territory was "dry" or "wet" dependent upon the boundary of the election precinct. No doubt, dissatisfaction on the part of people residing in municipalities relative to the operation of the local option law led to the proposed constitutional amendment in 1910. As to what was in the minds of the people in 1910 when this amendment was submitted, some light on the question is reflected in the official Voters' Pamphlet mailed to each voter for his guidance. The amendment giving "exclusive power to license, regulate, control, or to suppress or prohibit the sale of intoxicating liquor" was construed by those who favored the amendment to mean:

"It means home rule for cities in the control or suppression of the liquor traffic. In all other respects the amendment is identical with the present Constitution, as every city in the State now has absolute self-government on all other questions, subject to the criminal laws of the State, and this condition will not be changed by the proposed amendment."

"It will prevent the combining of outside precincts and districts in one local option district, to the injury of a city situated there."

Turning to the argument of the "Oregon Dry Campaign Committee" as published in the official pamphlet, relative to the proposed amendment, we find:

"'The Home Rule Amendment', so called, is un-American. The State is the unit. Our cities must not be permitted to set up separate principalities in absolute independence of our State laws, particularly the criminal laws. A vice which shocks the sentiment of mankind or endangers public welfare sufficiently to be prohibited by State laws, cannot be permitted in our municipalities without overriding the laws of the commonwealth, undermining the supremacy of the State and introducing the worst form of minority rule, vicious and anarchistic in all its tendencies."

In both these arguments there was the predominating idea that the power delegated to municipalities under this proposed constitutional amendment was still subject to the Constitution and the criminal laws of the state and that there would not be a complete surrender of the sovereign power.

The adoption of the amendment, however, did not settle the question. The conflict continued between the different units of government relative to control of the liquor traffic. See *State v. Schluer,* 59 Or. 18 (115 P. 1057), and *State v. Hearn,* 59 Or. 227 (115 P. 1066, 117 P. 412). Apparently the people after a trial of about four years were not satisfied with the manner in which the liquor traffic was being controlled and regulated by municipalities under the Home Rule Amendment. They were not willing to tolerate the evils attendant upon the operation of the open saloon. Public opinion so changed that, on November 3, 1914, the people adopted Art. I, section 36, of the Oregon Constitution, generally referred to as the "Prohibition Amendment". Two years later, on November 7, 1916, the people further evidenced their intention to ban the

use of intoxicating liquor by adopting Art. I, section 36a of the Constitution.

After operating under the Prohibition Amendment for a period of many years a majority of the people were not satisfied with the results. The pendulum of public opinion was swinging in the opposite direction relative to the solution of this social problem and, on July 21, 1933, the people, through the exercise of the initiative powers conferred upon them by the Constitution, repealed sections 36 and 36a of Art. I of the Constitution. The people also in 1932, through the exercise of the initiative, repealed chapter 1, Title 15, Oregon Code 1930, known as the "General Prohibition Law" or the "Anderson Act".

While repeals by implication are not favored, we think the people by the adoption of the prohibition amendments in 1914 and 1916 have indicated a clear intention to repeal section 2 of Art. XI so far as it delegates authority to municipalities to control and regulate the sale of alcoholic beverages. We are not impressed by the argument that it was the intention of the people merely to suspend or hold in abeyance the authority delegated to cities under the Home Rule Amendment. In our opinion it is far more reasonable to assume that the people, by initiating the prohibition amendments above mentioned, intended to deliver a death blow to traffic in intoxicating liquors. It was not contemplated that the corpse would ever come to life. The power once vested in municipalities to control and regulate the sale of intoxicating liquors is in direct conflict with the purpose and intent of sections 36 and 36a of Art. I of the Constitution. When the people specified in their fundamental law that "all provisions of the constitution and laws of this state, and of the charters and ordinances of all cities, towns

and other municipalities therein, in conflict with the provisions of this section, are hereby repealed'', there was no doubt as to what they had in mind. It was the beginning of a ''new deal''. The slate was wiped clean.

██ Plaintiff, however, invokes the common law rule of statutory construction that, when a repealing statute is itself repealed, the first statute is revived. Even as applied to statutory enactments this common law rule is not applicable where a contrary intention is declared or is necessarily implied from the enactment by which the last repeal is effected. Statutes are revived by operation of law and by express legislative enactment. The common law rule above mentioned is based upon a presumption of intention to revive the original act by reason of the repeal of the repealing act. It is a presumption, however, which may be overcome by an express or implied intention to the contrary. Courts in some instances have so extended this common law rule of construction that, in many jurisdictions, statutes have been enacted providing that where an act repealing a former act is itself repealed the last repeal shall not revive the act repealed, unless it is expressly so provided: 59 C. J. 942; 25 R. C. L. 933. The rule of implied revival, if not cautiously invoked, may have dire consequences. The legislature no doubt had this in mind when, at the session during which it enacted the Oregon Liquor Control Act, it also enacted chapter 89, Laws of Oregon for 1933 (Second Special Session), providing that ''whenever a constitutional provision is repealed, which repeals or suspends in whole or in part a former constitutional provision either expressly or by implication, such former constitutional provision so repealed or suspended thereby shall not be revived unless it expressly shall be so provided. * * *.'' Whatever may be the force and

effect of this common law rule of statutory construction, we think it should not be extended to the construction of constitutional amendments. No case has been cited, and we have been able to find none holding that this ancient rule of which Blackstone and Kent speak has ever been applied in construing constitutional amendments. It is dangerous to subject the Constitution to such niceties of the law. Since the clear intention of the people in the adoption of the prohibition amendments has been ascertained, the court should function by giving effect to such intention and not invoke a somewhat shadowy rule of construction frowned upon by a co-ordinate branch of the government.

■ Having reached the conclusion that Art. XI, section 2, of the Constitution, relative to the control and regulation of alcoholic beverages by municipalities, was repealed and that it was not revived by repeal of the prohibition amendments (Art. I, sections 36 and 36a of the Constitution) we might well conclude our consideration of this phase of the case.

■ However, let it be assumed that Art. XI, section 2, is still of force and effect. It does not follow that the Oregon Liquor Control Act contravenes such section of the Constitution. Notwithstanding the power delegated to cities under the Home Rule Amendment, they are still instrumentalities for the administration of the general laws of the state within their corporate boundaries. Under our constitutional system of government, a municipality is an agency of the State. In delegating authority under the Home Rule Amendment, it was not contemplated that a state be created within a state. Such is the doctrine announced in the well considered case of *Straw v. Harris,* 54 Or. 424 (103

P. 777), wherein the court in construing Art. XI, section 2, of the Constitution, said:

"* * * and whatever may be the literal import of the amendments it cannot be held that the State has surrendered its sovereignty to the municipalities to the extent that it must be deemed to have perpetually lost control over them. This no State can do. The logical sequence of a judicial interpretation to such effect would amount to a recognition of a state's independent right of dissolution. It would but lead to sovereigntial suicide. It would result in the creation of states within the state and eventually in the surrender of all state's sovereignty all of which is expressly inhibited by Article IV, Section 3, of our national constitution. Power to enact local legislation may be delegated, but this of necessity, whether stated or not, is always limited to matters consonant with, and germane to, the general purpose and object of the municipalities to which such prerogatives may be granted.

"Municipalities are but mere departments or agencies of the State, charged with the performance of duties for and on its behalf, and subject always to its control. The State, therefore, regardless of any declarations in its constitution to the contrary, may at any time revise, amend, or even repeal any or all of the charters within it, subject, of course, to vested rights and limitations otherwise provided by our fundamental laws. This, under the constitution as it now stands, may be done by the legislature through general laws only, and the same authority may be invoked by the people through the initiative by either general or special enactments; only the legislature being inhibited from adopting the latter method."

*Rose v. Port of Portland,* 82 Or. 541 (162 P. 498), and *Lovejoy v. Portland,* 95 Or. 459 (188 P. 207), strongly reiterate this doctrine and the court ever since has consistently adhered to the same.

The heart and soul of the Home Rule Amendment pertaining to the delegation of rights to municipalities

is expressed in the provision that such rights are "subject to the constitution and criminal laws of the State of Oregon". The State Liquor Control Act is entitled "An act to provide for the regulation and control of the manufacture of and traffic in alcoholic beverages; to establish a commission to administer said act and define the duties thereof, and making an appropriation therefor; to provide a system of licenses and permits; to define certain offenses and the punishment thereof; repealing certain acts herein specified; and declaring an emergency." Section 2 thus sets forth the object and purpose of the act:

"This act shall be deemed an exercise of the police powers of the state, for the protection of the safety, welfare, health, peace and morals of the people of the state; to prevent the recurrence of abuses associated with saloons or resorts for the consumption of alcoholic beverages; to eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of such beverages and to promote temperance in the use and consumption of alcoholic beverages; and it hereby is declared that the subject matter of this act involves in the highest degree the economic, social and moral well-being and the safety of the state and all its people, and by reason thereof is a necessary subject for immediate general legislation operating uniformly throughout the state; and all provisions of this act shall be liberally construed for the accomplishment of these purposes."

Then follows a detailed and comprehensive plan whereby the state has vested exclusive authority in a commission to regulate and control among other things the "manufacture, possession, sale, purchase, transportation, importation, and delivery of alcoholic liquor". It has the attributes of a criminal law in that penalties are provided for the violation of its provisions. It is a general law applicable to all municipali-

ties and repeals by implication all charters and ordinances in conflict therewith.

It is next contended that the state act violates Art. IV, section 20, of the Constitution, in that it embraces more than one subject and contains matters not expressed in the title. We think the subject matter of the act is germane to and properly connected with the subject as expressed in the title, viz., the regulation and control of traffic in alcoholic beverages. The title need not constitute an index to all matters contained in the act in order to meet the requirement of the above constitutional provision: *Brugger v. Wagner*, 135 Or. 615 (297 P. 343), and cases therein cited.

Finally, it is urged that the act is a revenue measure and for that reason does not become operative for 90 days after it is approved by the governor. The main purpose of the act is to control and regulate traffic in alcoholic beverages. The provisions relating to revenue are only incidental to the main purpose of the act and are necessary in order properly to administer the same.

The decree of the lower court is affirmed.