Argued March 13; affirmed June 11, 1946

# CITY OF COOS BAY *v.* AERIE NO. 538 OF FRATERNAL ORDER OF EAGLES ET AL.

(170 P. (2d) 389)

DAL M. KING, Judge.

*David J. Grant, Jr.,* of Coos Bay (J. B. Bedingfield and Harold A. Olson, of Coos Bay, on brief), for appellant.

*Collier H. Buffington,* of Gold Beach (with George L. Belt, of Gold Beach, on brief), for respondents.

George Neuner, Attorney General, and Grace L. Bottler, Assistant Attorney General, both of Salem, on brief for the State of Oregon, amicus curiae.

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK and HAY, Justices.

BAILEY, J. One of the principal questions involved on this appeal is whether ordinance No. 1590, passed by the city of Marshfield on March 13, 1944, is repugnant to and incompatible with the statutes of the state of Oregon relating to the regulation and control of traffic in alcoholic beverages. This ordinance, as far as material here, reads as follows:

"Section 6. There are hereby levied and shall be collected quarter-annual occupation taxes upon the persons on account of the business activities and in the following amounts, to-wit:

"Upon persons engaged in and carrying on the business of operating Clubs, Night Clubs and Service Establishments where liquor is served and which are licensed by the State of Oregon under Club or Service License pursuant to the laws of the State of Oregon and of the rules and regulations of the Oregon Liquor Control Commission, an occupation tax in the sum of One Hundred Twenty-five Dollars ($125.00) per quarter year, * * *."

Ordinance No. 1590 was enacted pursuant to the following provision of the charter granted to the city of Marshfield by a special act of the legislature in 1905:

"Section 28. The Council has power and authority within the City of Marshfield:
* * * * *
"33. To license, tax, and regulate, for the pur-

pose of city revenue, all such business, callings, trades, employments, and professions as the Council may require to be licensed, and as are not prohibited by the laws of the State of Oregon." Chap. 251, Special Laws of Oregon, 1905.

At an election held on November 7, 1944, the electors of the city of Marshfield adopted a new charter which changed the name of that city to "City of Coos Bay" and repealed all charters previously enacted for the city of Marshfield. This new charter, in chapter I, provides as follows:

"Section 5. Prior Ordinances. All Ordinances and regulations (1) heretofore enacted by the City, and (2) in force when this Charter takes effect, shall, insofar as consistent with this Charter, remain in full force, (1) after it takes effect, and (2) until they are repealed.

"Section 6. Succession of Rights and Liabilities. The City of Coos Bay shall be the legal successor to the City of Marshfield as it existed under its old Charter, and shall succeed as such to all the rights, privileges, duties and liabilities of the former City existing at the time this Ordinance takes effect."

Chapter II contains the following provisions:

"Section 100. General Grant of Power. The City of Coos Bay shall have all the rights, powers, privileges and immunities which the constitutions, statutes, and common law of the United States and of this State expressly or impliedly grant or allow municipalities, as fully as though this Charter expressly stated each of those rights, powers, privileges and immunities.

"Section 101. Specific Grants of Power. The following shall be deemed a part of the powers conferred upon the City by this Charter: * * *

"(7) Occupational Taxes. To license, tax and regulate for the purpose of city revenue all busi-

nesses, callings, trades, and employments as the City Council may require and as are not prohibited by the laws of Oregon.''

The amended complaint, filed in January, 1945, in addition to setting forth the hereinbefore mentioned facts, alleges that defendant, Aerie No. 538 of Fraternal Order of Eagles, is a nonprofit corporation organized and existing under the laws of the state of Oregon; that the individual defendants are officers, and as such conduct the business, of the corporation; that the defendants, on March 13, 1944, the date of the passage of ordinance No. 1590, and ever since, ''have been and are now engaged in operating a club and service establishment within'' the city of Coos Bay, Oregon,

''where liquor is served, and which club and service establishment was and at all times herein mentioned has been and is now licensed pursuant to the laws of the state of Oregon, under the rules and regulations of the Oregon Liquor Control Commission of said State of Oregon, and in the conduct of said club and service establishment at all times herein mentioned has and does now sell beer, soft drinks, and has mixed hard liquor with mixers for the persons frequenting said establishment and club, for which service and mixers the defendants have made a charge which was collected by the defendants for and in the name of said Lodge; * * * and at all said times has maintained a bar and tables where patrons thereof might drink intoxicating liquor furnished by themselves and served by the defendants.''

It is then alleged that by virtue of ordinance No. 1590 there became due and payable by the defendants to the plaintiff, for the period from March 13, 1944, to December 31 of that year, the sum of $399.19, which the defendants have refused to pay; that the defend-

ants assert that they have been duly licensed by the Oregon Liquor Control Commission to operate their club and service establishment, and that by reason thereof ordinance No. 1590 "is invalid insofar as it purports to levy or assess any tax against defendants' said club and service establishment business within" the city of Coos Bay.

In its prayer the plaintiff asks judgment against defendants for the sum of $399.19, or, in the alternative, for a declaration of "plaintiff's rights and duties in the premises and of the rights and duties of the defendants and each of them."

Defendants' demurrer to the amended complaint, on the ground that it does not state facts sufficient to constitute a cause of action against the defendants, nor to entitle the plaintiffs to the relief demanded, was sustained and upon the plaintiff's failure to plead further, judgment was entered in favor of defendants. Plaintiff has appealed.

Article I, § 36, and article I, § 36a of the Oregon constitution were adopted in November, 1914 and 1916 respectively. Section 36 prohibited, after January 1, 1916, the manufacture or sale of intoxicating liquors within the state except for medicinal, scientific, sacramental, or mechanical purposes, and § 36a prohibited the importation into the state of intoxicating liquors for beverage purposes.

■ The adoption of these two last-mentioned amendments to the constitution repealed § 2 of article XI "so far as it delegates authority to municipalities to control and regulate the sale of alcoholic beverages", and it was not revived by the repeal of § 36 and § 36a in July, 1933. *City of Klamath Falls v. Oregon Liquor Control Commission*, 146 Or. 83, 29 P. (2d) 564. We

are therefore not concerned with the amendment of § 2, article XI, in 1910, which vested in each municipality "the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors" within its territorial limits.

At the second special session of the thirty-seventh legislative assembly of the state of Oregon, beginning November 20, 1933, there were passed two statutes relating to the liquor traffic. The first of these is chapter 17, Oregon Laws 1933, (2d Sp. Sess.) known as the "Oregon Liquor Control Act", which, with subsequent amendments up to 1940, is codified as § 24-101, to and including § 24-149, O. C. L. A. The title of this act reads as follows:

"An act to provide for the regulation and control of the manufacture of and traffic in alcoholic beverages; to establish a commission to administer said act and define the duties thereof, and making an appropriation therefor; to provide a system of licenses and permits; to define certain offenses and the punishment thereof; repealing certain acts herein specified; and declaring an emergency."

We shall refer now to certain sections of that act which defendants assert are inconsistent with the provisions of ordinance No. 1590 of the city of Coos Bay, and which, they contend, indicate an intention on the part of the legislature to deprive municipalities of the right to impose occupational or privilege taxes such as those here involved.

Section 24-102, O. C. L. A., declares the purpose of the act and the extent of its operation, and is as follows:

"This act shall be deemed an exercise of the police powers of the state, for the protection of the safety, welfare, health, peace and morals of

the people of the state; to prevent the recurrence of abuses associated with saloons or resorts for the consumption of alcoholic beverages; to eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of such beverages and to promote temperance in the use and consumption of alcoholic beverages; and it hereby is declared that the subject matter of this act involves in the highest degree the economic, social and moral well-being and the safety of the state and all of its people, and by reason thereof is a necessary subject for immediate general legislation operating uniformly throughout the state; and all provisions of this act shall be liberally construed for the accomplishment of these purposes."

The Oregon liquor control commission is created by § 24-104, O. C. L. A., and § 24-106, O. C. L. A., prescribes its duties and powers, in part, as follows:

"(d) To control the manufacture, possession, sale, purchase, transportation, importation and delivery of alcoholic liquor in accordance with the provisions of this act * * *."

Under the provisions of § 24-113, O. C. L. A., as amended by § 1, chapter 332, Oregon Laws 1941, there is vested in the commission the exclusive right "to purchase, sell, have in possession for sale, import or transport, * * * spirituous liquor, or any alcoholic liquor containing over 17 per cent of alcohol by weight". The duty is imposed upon the commission by § 24-117, O. C. L. A., to "provide for the licensing as herein provided of persons * * * to distribute, solicit and take orders for and to sell beer and wine and other alcoholic liquors."

Section 24-118, as amended by § 1, chapter 446, Oregon Laws 1945, is in part as follows:

"Licenses shall be subject to the regulations of the commission, and the provisions of this act, and

shall be of the following classes, enumerated and described in this section:

\* \* \* \* \*

"9. Club Licenses. Whenever a club as defined in section 24-103, O. C. L. A., has been in existence and acting not less than two years prior to application therefor, and not otherwise, a club license may be issued which shall allow the retail sale of beer containing not more than 4 per cent of alcohol by weight, ale, porter and stout containing not more than 8 per cent of alcohol by weight and natural wine containing not over 14 per cent of alcohol by volume, to be consumed on the premises, and only by members or their guests. The sale of any alcoholic liquor in such club other than above specified shall be unlawful."

The word "club" is defined by § 24-103 (2), O. C. L. A., to mean:

"an association of persons, whether incorporated or unincorporated, for the promotion of some common object (not including associations organized for any commercial or business purpose the object of which is money profit), owning, hiring or leasing a building, or space in a building, of such extent and character as in the judgment of the commission may be suitable and adequate for the reasonable and comfortable use and accommodation of its members and their guests and provided with suitable and adequate kitchen and dining-room space and equipment, implements and facilities, and employing a sufficient number of servants or employees for cooking, preparing and serving food and meals for its members and their guests; \* \* \*."

The annual fee required for a club license is fixed in the sum of $50. § 24-119, O. C. L. A., as amended by § 2, chap. 272, Oregon Laws 1941.

Section 24-147, O. C. L. A., is as follows:

"Inasmuch as this statute has been hereinbefore declared to be a subject of general law, and de-

signed to operate uniformly throughout the state, it hereby is declared that the provisions herein contained shall be paramount and superior to and shall fully replace and supersede any and all municipal charter enactments or local ordinances inconsistent herewith, and such charters and ordinances hereby are repealed.''

It is provided in § 24-148, O. C. L. A., that:

''All license fees collected by the commission shall be credited to unreceipted funds of the Oregon liquor control commission license fee account and be payable by the commission as follows:

''As to all license fees collected from any licensee whose place of business is in any incorporated city or town, such license fees shall, after deducting the proportionate share of the expense of administering the licensing provisions of this act, be paid to the treasurer of such city or town * * *.''

Included among the licenses which may be issued by the commission under the Oregon liquor control act, in addition to club licenses, are the following: Restaurant, hotel, package store, retail beer, unrestricted retail draft or pasteurized bottled beer, druggist, and railroad or boat. § 24-118, O. C. L. A., as amended by chapter 446, Oregon Laws 1945.

We should consider, in connection with the Oregon liquor control act, chapter 271, Oregon Laws 1945. The objects sought to be accomplished by this act, according to the title thereof, are to ''further regulate and control the consumption of alcoholic beverages in private and public clubs and places, to provide a license fee, * * *.'' Section 1 provides that ''For the purposes of this act the Oregon liquor control commission shall have all the powers and duties conferred upon it by the Oregon liquor control act,'' and is ''authorized and directed to administer and perform

the duties provided by this act, within and in accordance with the powers and duties prescribed in the Oregon liquor control act, and acts amendatory thereof.'' Under the provisions of chapter 271, the commission is authorized to issue service licenses which ''shall permit the mixing, storing or serving of alcoholic liquor by the licensee; provided, however, that such license shall not permit the sale of any alcoholic . liquor.'' The annual fee for such license is $250. This act repealed chapter 464, Oregon Laws 1941, which also provided for the issuance of service licenses.

██ The Oregon liquor control act and chapter 271, *supra,* are regulatory measures involving the exercise of the police power. Their principal purpose is to regulate and control traffic in alcoholic beverages. § 24-102, O. C. L. A. The revenues derived from the fees provided in the two acts are intended primarily to defray the cost of administering the acts and are only incidental to their main purpose. *City of Klamath Falls v. Oregon Liquor Control Commission,* supra.

■ On the other hand, ordinance No. 1590 was not passed as an exercise of the police power. It is a revenue measure based upon the taxing power of the city. Revised Vol. 3, McQuillin, Municipal Corporations, 2nd Ed., § 1092, p. 654. It does not seek to regulate the business of persons engaged in the traffic of alcoholic beverages.

██ At the time the ordinance in question was passed, Marshfield was operating under a charter granted by a special act of the legislature. Chap. 251, Special Laws of Oregon, 1905. The power and authority were conferred upon the city to license for the purpose of revenue ''all such business, callings, trades, * * * as the Council may require to be licensed,

and as are not prohibited by the laws of the State of Oregon.'' id. § 28, subsec. 33. The power of the legislature to grant to municipalities authority to impose a tax upon businesses, occupations, etc., is not disputed and has been upheld by this court. *Lent v. Portland*, 42 Or. 488, 71 P. 645; *Abraham v. City of Roseburg*, 55 Or. 359, 105 P. 401. Likewise, the voters of the city had the power, when they adopted their new charter in 1944, to incorporate therein this authority. Art. XI, § 2, Constitution of Oregon; *Noonan v. Seaside*, 97 Or. 64, 70, 191 P. 651; *City of Salem v. Oregon-Washington Water Service Company*, 144 Or. 93, 114, 23 P. (2d) 539; *Wilson v. City of Medford*, 107 Or. 624, 645, 215 P. 184; Revised Vol. 1, McQuillin, Municipal Corporations, 2d Ed., § 342, p. 930.

■ The Oregon liquor control act vests exclusive authority in the Oregon liquor control commission to control and regulate the sale of alcoholic beverages throughout the state. *City of Klamath Falls v. Oregon Liquor Control Commission*, supra. It expressly repeals ''charter enactments or local ordinances'' which are inconsistent with its provisions. § 24-147, *supra*. We are therefore confronted with the question of whether ordinance No. 1590 is inconsistent with the provisions of that act. In passing upon a similar matter, the court, in *Ex parte Galusha*, 184 Cal. 697, 195 P. 406, said:

> '' * * * The municipality, in imposing an occupational tax upon attorneys, is not interfering with state regulations, for it is not attempting to prescribe qualifications for attorneys different from or additional to those prescribed by the state. It is merely providing for an increase in its revenue by imposing a tax upon those who, by pursuing their profession within its limits, are deriving benefits from the advantages especially afforded

by the city. The tax is levied upon the business of practicing law, rather than upon a person because he is an attorney at law. Ex parte Johnson (App.) 190 Pac. 852. A license to practice does not carry with it exemption from taxation."

See also in this connection *Lent v. Portland,* supra; *Abraham v. City of Roseburg,* supra.

In *Bardon, et al., v. S. L. Nudelman, Director of Finance, et al.,* 369 Ill. 214, 15 N. E. (2d) 836, 117 A.L.R. 683, fifteen hundred eighty-five duly licensed retail liquor dealers filed their complaint to enjoin the director of finance and state treasurer from enforcing against them the provisions of "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption" on the ground that the tax imposed by that act and the license imposed under the provisions of §§ 1 and 4, article 5 of "An act relating to Alcoholic Liquors" referred to as the Liquor Control Act, "are for the identical privilege of engaging in the business of selling tangible personal property to purchasers for use or consumption, and that the result is double taxation." In holding that the two statutes were not inconsistent, the court stated as follows:

"While both of the taxes here involved may be classified as occupational in character, an examination of the two statutes shows that they were enacted with different objects in view. The Retailers' Occupation Tax act is a revenue measure based upon the taxing power. There are no provisions in it which seek to regulate the business of persons engaged in selling tangible personal property at retail, except to the extent necessary to collect the tax imposed by the act. On the other hand, the Liquor Control act, Ill. Rev. Stat. 1937, c. 43, §§ 94, et seq., is primarily an exercise of the police power. Section I of article 1 thereof provides that the

act shall be liberally construed 'to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors;' * * *.''

The court, after setting forth the various provisions of the liquor control act, proceeds as follows:

"The retail liquor dealer's license fee to the State, fixed by the Liquor Control act, * * * is $50 per year. It is significant that no effort is made to show that this license fee is prohibitory or that the amount charged is more than sufficient to defray the reasonable expense of enforcing this police measure. It is not charged that under the guise of regulation, the State is, in fact, collecting these fees for revenue purposes."

The distinction between the taxing and police powers is described in 4 Dillon, Municipal Corporations, 5th Ed., § 1408, as follows:

"The *taxing power* is to be distinguished from the *police power,* the general nature of which has been before adverted to. The power to license and regulate particular branches of business or specified matters is usually a police power; but when license fees or exactions are plainly imposed for the sole or main purpose of revenue, they are, in effect, taxes."

■ Securing of revenue for municipal purposes is peculiarly a matter of local concern. One of the methods of procuring such funds, and firmly established in the municipal legislation of this state, is the imposition of an occupation or privilege tax. Charters granted to cities by special legislative acts invariably contained provisions authorizing such taxes, and most

of, if not all, the charters which have been enacted or amended since 1906, pursuant to article XI, § 2, of our constitution which confers upon the voters of every city and town the "power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon," have similar provisions.

The tax imposed by ordinance No. 1590 is not on the right to sell alcoholic beverages; it is levied upon the business of operating clubs, night clubs, and service establishments, as defined in the ordinance. These businesses are deriving benefits from the advantages afforded by the city, and it is for such benefits that occupation or privilege taxes are levied.

The provisions of the Oregon liquor control act and chapter 271, *supra,* when construed alone and not in reference to any other legislative enactment, are not in conflict with the ordinance here assailed. It is, however, contended by the defendants that the Oregon liquor control act should be read in connection with chapter 46, Oregon Laws 1933, (2nd Sp. Sess.) which was passed at the same session of the legislature. These two statutes deal with a particular subject, the liquor traffic, and should be regarded as *in pari materia.*

Chapter 46, with subsequent amendments up to 1940, codified as § 24-301, to and including § 24-315, O.C.L.A., according to its title, imposes "a privilege tax on the manufacture and distribution of certain alcoholic beverages, and malt syrups", and provides "for the collection and disposition of such tax." Section 24-315, O. C. L. A., as amended by § 1, chapter 280, Oregon Laws 1945, provides that a certain proportion of the revenue "derived from the tax imposed by this act

upon manufacturers and importing distributors'' of malt beverages and alcoholic beverages shall be paid ''to the several incorporated cities and the several counties of the state in proportion to their respective populations''. Then follows this sentence: ''No incorporated city or county of this state shall impose any fee or tax in connection with the production, sale, licensing or handling of alcoholic beverages or malt beverages.'' Defendant contends that ordinance No. 1590 is inconsistent with this provision and therefore invalid.

The foregoing clause, with minor changes, has been a part of chapter 46, *supra,* since 1935. Chap. 427, § 12, Oregon Laws 1935. Its prohibition is limited to the imposition of a fee or tax in connection with the production, sale, licensing or handling of certain designated beverages, to wit, alcoholic beverages and malt beverages, which beverages are defined by § 1 of chapter 46, *supra,* as amended, (§ 24-301, O. C. L. A.) as follows:

''For the purposes of this act and unless the context clearly indicates a different meaning:

''(a) The words 'alcoholic beverages' mean and include any fortified wine, wines or similar fermented vinous liquor and fruit juice, or other fermented beverage fit for beverage purposes, containing more than one-half of 1 per cent of alcohol by volume and not more than 17 per cent of alcohol by weight.

''(b) The words 'malt beverages' mean and include beer, ale, porter, stout and similar beverages obtained by the alcoholic fermentation of an infusion or decoction of barley malt and hops in drinking water and containing more than one-half of 1 per cent of alcohol by volume and not more than 17 per cent of alcohol by weight.
* * * * *''

Ordinance No. 1590, which is here assailed, imposes a tax upon persons engaged in carrying on the business of operating clubs, night clubs and service establishments where liquor is "served" under a club or service license issued by the state of Oregon. Under a service license, the licensee is permitted to mix, store or serve, but not to sell, alcoholic liquor. § 2, chap. 271, Oregon Laws 1945. A club license not only permits the retail sale of beer containing not more than 4% of alcohol by weight, ale, porter and stout containing not more than 8% of alcohol by weight, and natural wine containing not more than 14% of alcohol by volume (§ 24-118, O. C. L. A., as amended by § 1, chap. 446, Oregon Laws 1945) but also permits the service of alcoholic liquor regardless of its alcoholic content. § 3, chap. 271, *supra*.

■ The word "served" is not defined in the ordinance. There is no indication in the ordinance that it was to have any other or different meaning when applied to club licenses than when applied to service licenses. The holder of a service license is authorized to serve but not to sell alcoholic liquor. Thus it will be seen that the legislature has itself supplied the distinction between the word "serve" and the word "sell"; the latter is not included within the meaning of the former. In its ordinarily accepted meaning, the word "serve" is likewise limited.

■ This ordinance, as we construe it, is not in conflict with the clause in § 24-315, O. C. L. A., as amended by § 1, chapter 280, Oregon Laws 1945, on which the defendants rely and which reads: "No incorporated city or county of this state shall impose any fee or tax in connection with the production, sale, licensing or handling of alcoholic beverages or malt beverages."

The tax imposed by the ordinance is not in connection with the production or sale of alcoholic or malt beverages. It is limited to certain designated businesses where liquor is served.

 Nor is it a tax in connection with the handling of alcoholic or malt beverages. In Funk & Wagnalls New Standard Dictionary, one of the definitions, and the only one which is appropriate here, of the word "handle" is: "To buy and sell; trade, invest, or deal in; as, to *handle* cotton or wheat; to *handle* stocks and bonds." Webster's New International Dictionary, Second Edition, defines it as follows: "To have pass through one's hands; to buy and sell; to deal, or trade, in; as, they *handle* only fruit." The importing distributor of alcoholic and malt beverages, required by § 24-302, O. C. L. A., to pay a privilege tax, might be said to *handle* such beverages, but an establishment which is authorized to serve liquor is not thereby granted the right to *handle* it.

 There is one more feature of the clause in question which requires notice. It prohibits the imposition of a tax "in connection with the * * * licensing * * * of alcoholic beverages or malt beverages." Alcoholic beverages and malt beverages are not licensed, but their production, sale and handling are licensed. Therefore, it is apparent that the legislature, by the use of the word "licensing", meant the licensing of the production, sale or handling of these beverages.

 The provision on which the defendants rely, as prohibiting the enactment of the ordinance here in question, is statewide in its scope and prevails over any charter provision or city ordinance which is in direct conflict therewith. *Burton v. Gibbons*, 148 Or. 370, 36 P. (2d) 786. But before the court is justified in holding

that an ordinance is invalid on that ground, it must appear that it is in direct conflict with some state law. No state law should be construed to deprive a city of the right to levy an occupation tax unless it is clear and unmistakable that the legislature so intended by its enactment.

█ The only other question remaining for decision is whether the defendant corporation is engaged in business within the meaning of that word as used in § 28, subsection 33, of the charter granted by the legislature to the city of Marshfield in 1905, which is hereinbefore set forth. The ordinance in question was enacted on March 13, 1944, and the new charter, under which the city of Coos Bay is now functioning, was not adopted until November 7, 1944, and therefore the authority of the city council to enact it must be determined by reference to the legislative charter and not to the one adopted by the voters of the city.

The complaint alleges that the defendant, Aerie No. 538 of Fraternal Order of Eagles, is a non-profit corporation duly organized and existing under the laws of the state of Oregon and that the individual defendants are officers of that corporation; that defendants, on March 13, 1944, and at all times since that date have been and are now engaged in operating a club and service establishment within the city of Coos Bay, Oregon, where liquor is served, "and which club and service establishment was and at all times herein mentioned has been and is now licensed pursuant to the laws of the State of Oregon, under the rules and regulations of the Oregon Liquor Control Commission of said State of Oregon, * * *."

We assume, from the allegations of the complaint, that the defendant corporation has been issued a club license. Such a license is only issued to a club, as de-

fined by the Oregon liquor control act. § 24-118, O. C. L. A., as amended by § 1, chap. 446, Oregon Laws 1945. The definition of the word "club" has been hereinbefore set forth. A club, within the meaning of the act, is "an association of persons, whether incorporated or unincorporated, for the promotion of some common object (not including associations organized for any commercial or business purpose the object of which is money profit), * * *." § 24-103, O. C. L. A.

At the time the ordinance in question was enacted, the city council of Marshfield had the power and authority under its legislative charter "to license, tax, and regulate, for the purpose of city revenue, all such business, callings, trades, employments, and professions as the Council may require to be licensed * * *." Chap. 251, § 28 (33), Special Laws of Oregon, 1905.

The term "business" has many and varied meanings, depending upon the connection in which it is used. We are here principally concerned with its meaning as used in a law or city ordinance authorizing or imposing an occupation or privilege tax on businesses, callings, trades, employments and professions.

In *Cuzner v. California Club,* 155 Cal. 303, 100 P. 868, 20 L. R. A. (N. S.) 1095, a suit was brought by a member of the California Club to enjoin the selling or serving of liquors by the club to its members and their guests upon the ground that by making such sale the club was violating the provisions of an ordinance of the city of Los Angeles requiring the payment of a license fee by all persons engaged in the business of a retail liquor dealer. The ordinance imposed a license tax on a variety of businesses and callings. The particular provision there in question imposed a tax of $100 per month on "every person, firm, or corporation conducting, managing, or carrying on the business of

a retail liquor dealer". The court held that the ordinance did not apply to the California Club. It said:

> "The term 'business,' as used in a law imposing a license-tax on businesses, trades, professions, and callings, ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood. * * *
>
> "The following cases fully support the doctrine that transactions of the character here detailed do not bring a *bona fide* social club within the purview of a law or ordinance simply imposing a license-tax upon the business of liquor selling: * * *" (Citing numerous cases).

A similar question was presented in *Manassas Club v. City of Mobile,* 121 Ala. 561, 25 So. 628. The charter of the city of Mobile conferred upon the general council "authority to assess and collect from all persons or corporations trading or carrying on any business, trade or profession, * * * within the limits of said corporation, a license tax which shall be fixed and declared each year by ordinance of said corporation". The city, acting pursuant to the foregoing charter provisions, ordained "that a license tax for the fiscal year beginning on the 15th day of March, 1897, and ending on the 14th day of March, 1898, is hereby imposed and assessed on each person, firm, association, or corporation trading or carrying on any business, trade or profession, * * * within the limits of the city of Mobile, and the same is hereby fixed for such business, trade or profession as follows, to wit", and in the license schedule the following appears: "clubs and social circles where liquors are sold to members, guests and visitors." From the facts it appears that the Manassas Club, a corporation, was conducted as a social club and "did engage in and carry on the busi-

ness of selling by retail, in quantities in less than one quart, vinous, malt, and spirituous liquors to its members for valuable considerations''. In ruling that the city was not granted authority by its charter to levy a tax upon the Manassas Club, the court said:

"* * * The ordinance in question is not a police regulation of liquor dealers or others, but it includes various other occupations, as to which no power is given in the charter merely to regulate. It purports, by its terms, to impose a license tax for the carrying on of business, and is referable for its authority to that part of the charter granting power to assess and to collect such tax from persons or corporations 'trading or carrying on any business, trade, or profession.' We construe the ordinance as relating only to the revenues of the city. It has been generally held, and uniformly so in this state, that the business intended to be taxed by such enactments is one which is carried on for a livelihood or profit; and, though the number of sales, and the fact as to whether they so result, are not tests of the purpose of such business, yet, to be within the meaning of the law, they must be with a view of profit, or of pursuing business for a livelihood. * * * Applying the principle to the present case, we think the proof is insufficient to bring the defendant club within the meaning either of the ordinance or the charter power.''

To the same general effect, see *Svithiod Singing Club v. McKibbin,* 381 Ill. 194, 44 N. E. (2d) 904, and cases cited.

In *State v. Cooper,* 205 Minn. 333, 285, N. W. 903, 122 A. L. R. 727, the court quotes with approval from the syllabus in *City of Rochester v. Rochester Girls' Home,* 194 N. Y. S. 236, the following:

"An enterprise not conducted as a means of livelihood, or for profit, does not come within the ordi-

nary meaning of the terms 'business,' 'trade,' or 'industry.' ''

This court in *State v. Rubenstein*, 112 Or. 179, 228 P. 918, sanctioned the following definition of ''business'' as given in 4 Cooley, Taxation (4th ed.), § 1695:

'' 'Business,' where made subject to a tax, ordinarily means business in the trade or commercial sense, carried on for profit.''

█ Statutes granting authority to municipalities to impose an occupation or privilege tax must be strictly construed. *Abraham v. City of Roseburg*, supra (55 Or. 359); 37 C. J., Licenses, § 21, p. 180.

█ In our opinion the authority granted by the legislature to the city of Marshfield to impose an occupation or privilege tax did not include the right to levy the tax on an enterprise such as the defendant lodge, which is not being conducted for a livelihood or profit. Therefore the ordinance here involved, insofar as it applies to the defendant lodge and its officers, who are named as defendants, is invalid.

The judgment appealed from is affirmed.

BELT, Chief Justice, did not participate in the consideration of this opinion.